THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, CAGUAS PART, J. VILLARES RODRÍGUEZ, JUDGE, Respondent; JUAN CARRIÓN DÍAZ, Intervener.

No. C-62-46.   Decided December 21, 1962.

*J. B. Fernández Badillo,* Solicitor General, *Arturo Estrella,* Deputy Solicitor General, and *Rodolfo Cruz Contreras,* Assistant Solicitor General, for petitioner. *José M. Canals* for intervener.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The intervener Juan Carrión Díaz was charged with a violation of § 5–801 of Act No. 141 of July 20, 1960, because: "On or about March 11, 1962, in Caguas, Puerto Rico, which is part of the Superior Court of Puerto Rico, Caguas Part, Puerto Rico, he illegally, willfully and maliciously, drove and operated a Pontiac motor vehicle, 1954 model, license plate No. 669–682 on Celis Aguilera and Rafael Cordero Streets in Caguas, Puerto Rico, which are public thoroughfares, under the influence of intoxicating liquor."

The legal provision which is allegedly violated provides: "(a) It shall be unlawful for any person who is under the influence of intoxicating liquor to drive or operate any motor vehicle.

"(b) In any criminal prosecution for a violation of paragraph (a) above, relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, or breath, shall give rise to the following presumptions:

"1.—If there was at the time of the analysis five (5) hundredths of one (1) per cent, or less, by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor at the time of the alleged violation.

"2.—If there was at the time of the analysis in excess of five (5) hundredths of one (1) per cent but less than fifteen (15) hundredths of one (1) per cent by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered jointly with other competent evidence in determining the guilt or innocense of the defendant.

"3.—If there was at the time of the analysis fifteen (15) hundredths of one (1) per cent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor at the time of the alleged violation.

"4.—The provisions of paragraphs 2 and 3 of the preceding subsection (b) shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating liquor at the time of the alleged violation."

Section 5–803 is related with this provision, which in its pertinent part provides: "(a) Every person driving a motor vehicle shall be deemed to have given his consent to submit himself to a chemical analysis of his blood, breath or urine for the purposes set forth herein. It shall be construed that said consent is given for each of the three analyses prescribed herein, but any person required to submit himself to such chemical analyses shall have the right to elect between the blood or urine analysis or, where the necessary facilities are available, the breath analysis.

"(b) A peace officer shall require that any driver submit himself to anyone of said three chemical analyses after having detained and arrested him upon reasonable grounds for believing that said driver was driving or operating a vehicle under the influence of intoxicating liquor, or when, having detained him upon a possible violation of this act or the public service laws and regulations, there are reasonable grounds for believing that said person was driving or operating a motor vehicle under the influence of intoxicating liquor at the time of his arrest." And § 5–804, which in its pertinent part provides: (a) Any person held under the charge of driving or operating a motor vehicle under the influence of intoxicating liquor may refuse to submit himself to the chemical analysis to which § 1043 (5–803) of this title refers. (b) If the arrested person refuses to submit himself to the chemical analysis of his breath, blood or urine, as the case may be, the analysis shall not be made and he shall be taken to the presence of a judge or prosecutor, who shall, as soon as possible, take the sworn testimony of the peace officer making the arrest, in which testimony shall be set forth the facts causing the arrest as well as the fact that the arrested person has been requested by said peace officer, or by any of the officials mentioned in subsection (c) of the preceding § 1043 (5–803) of this title, to submit himself to one of the chemical analysis prescribed in this section, and his refusal to do so. If such request has been made by the peace officer then in charge of the police station, district or zone where the arrest was made and not by the peace officer who made the arrest, then the latter's sworn testimony shall be taken and in it shall be set forth the fact of the request made to the person arrested to submit himself to the said chemical analysis and his refusal to do so. Every such peace officer shall include in his sworn testimony, besides the aforesaid details, the fact that he explained to the arrested person the consequences of his refusal. The judge, or the prosecutor, as the

case may be, shall, as soon as possible, also take the sworn testimonies of any other persons who may have seen the arrested person driving or operating said motor vehicle under the influence of intoxicating liquor. In case a prosecutor has taken such testimony, if from the examination of the testifying witnesses it is evident that a violation of the provisions of this section has been committed and that there is sufficient cause to believe that the arrested person is guilty of such violation, the prosecutor shall submit to a judge the evidence thus obtained for the latter to determine whether there is probable cause of the commission of the offense. In all cases, if the judge considers there exists probable cause of the commission of the offense by the arrested person, he shall issue the proper order of commitment and shall forthwith seize his driving license. A copy of each one of these sworn testimonies shall be delivered to the arrested person at his request. (c) At the time of the trial the judge shall order the suspension of the license for a term of not more than 2 years whenever he shall find from the evidence that the defendant was not justified in refusing to submit himself to the chemical analysis to which § 1043 (5–803) of this title refers, where such be the case.

The penalties are provided in § 5–802 (1042) and in addition to the jail penalty it is provided that: "(d) In case of a first conviction the court shall, in addition to the above penalties, decree the suspension of the driver's license for a period of not less than one (1) year nor more than two (2) years, and in case of recidivism, the revocation shall be permanent."

As it appears from the minutes of the Superior Court of Puerto Rico, Caguas Part, that upon making a plea of not guilty at the arraignment, defendant requested the return of his driving license "because he believed that the seizure thereof violates defendant's right as to the presumption of innocence which he enjoys, since before holding a trial

he is being deprived of the privilege granted him when his license was issued." The trial court was in agreement with the return of the license on the following grounds: "We understand and conclude that defendant is right in his contention. It is true that subdivision (b) of § 5–804 of the Traffic Law provides that the judge to whom the case is submitted, after determining probable cause shall order defendant's arrest and *shall forthwith seize his driving license.'* In our opinion this legal provision, respecting the seizure of the license by the judge who determines probable cause is unconstitutional, since it not only violates the due process of law (in practice his license is being suspended without previous hearing), but it also destroys the presumption of innocence which accompanies every defendant, as to the crime of driving a vehicle while intoxicated, as well as to the additional crime of unjustifiably refusing to submit to the required legal chemical analysis. In other words, the judge who determines probable cause is deciding a priori that defendant has unjustifiably refused to submit to the chemical analysis and is *punishing him by suspending the license before defendant has had his day in court.*"

In favor of the merits of its petition for certiorari, petitioner, The People of Puerto Rico, points out that (1) the Superior Court of Puerto Rico, Caguas Part, erred "in deciding that § 5–804 of the Vehicle and Traffic Law of Puerto Rico is unconstitutional because it violates the due process of law in not granting a hearing prior to the suspension of the driving license"; (2) it likewise erred "in deciding that § 5–804 of the Vehicle and Traffic Law of Puerto Rico is unconstitutional because it violates the principle that every defendant is presumably innocent."

■■ 1—Relying on the inherent extraordinary police power of every Legislature to confront an emergency of war as well as a civil emergency, the constitutional principle is firmly established that when an urgent public need so re-

quires, the Legislature may summarily authorize the confiscation of a property right, subject to later judicial review: (1) it may requisition property needed for the prosecution of the war, (2) take possession of all property which might be useful to the enemy, (3) order the temporary arrest of any citizen as a measure of public safety, (4) seize an automobile used in the illegal traffic of drugs or liquor, (5) a deadly weapon which a potential aggressor may be carrying, (6) any material employed in the commission of a crime, (7) take possession of property presumably abandoned by its owner prior to determination of its actual abandonment, (8) order the immediate destruction of any property which is considered dangerous, (9) insist on the immediate collection of taxes without previous appraisal or assessment, (10) allow tenants to remain in possession of the leased property against the will of the landlord, (11) establish an authentic control of prices for any industry or business, (12) prohibit the use of certain procedure or procedural remedies. As an exposition of the variety of circumstances in which a civil emergency compares with an emergency of war, see *Yakus* v. *United States*, 321 U.S. 414, 442-444, 88 L. Ed. 834, 858-859 (Stone, 1944).

What must be investigated is not the lack of unconstitutional power, but the wisdom of exercising the State's police power, whether it concerns a privilege—an already discredited concept—or a right—46 Iowa Law Rev. 864–866 (1961). I do not believe that "the urgent public necessity" created by the incidence of fatal accidents on our roads requires a refined exposition to prove its right to be included in the list of civil emergencies.

Within the elaboration of the concept of civil emergency, the rule of deference has been established, that is, the deference which the public interest deserves as against the individual interest in a case of urgent public necessity. The best exposition of this rule is found in the case of *Wall*

v. *King*, 206 F.2d 878, 883 (Magruder, 1953): "The incidental hardship upon an individual motorist, in having his license suspended pending investigation and review, must be borne in deference to the greater public interest served by the statutory restriction. It is well-settled that the concept of due process of law does not necessarily require the granting of a hearing prior to the taking of official action in the exercise of the police power."

■ 2—Defendant alleges that the establishment of certain presumptions provided by law for the purpose of determining, by means of the alcohol content shown by blood or urine samples, whether or not the driver of a motor vehicle is under the influence of intoxicating liquor, contravenes the secular and universally recognized maxim of *in dubbio pro reo*, since it changes the *onus probandi* and obliges defendant to overcome the presumption of drunkenness and that his refusal to have a blood sample taken is prima facie unjustified, thereby violating the presumption of innocence enjoyed by defendant in every criminal prosecution. On the contrary, The People of Puerto Rico alleges that the presumption of innocence does not constitute a question of evidence and that it is only a constitutional statement that the prosecuting attorney must prove the crime beyond any reasonable doubt.

■ The establishment of certain presumptions as to the alcoholic content in the blood or urine samples has no other purpose than to give the judge, upon determining probable cause, a more scientific basis for weighing properly whether the driver of the vehicle was intoxicated at the moment of committing the crime. Undoubtedly, in order to establish the commission of the crime of driving under the influence of intoxicating liquor as well as to order the revocation of the driver's license at the time of the trial, the prosecution is under the obligation to prove, besides the commission of the crime, the driver's unjustified conduct in refusing to have the required samples taken, before defendant has the oppor-

tunity to introduce evidence in his defense. It concerns two distinct situations of fact which must be established with different facts; the first one refers to the commission of a public offense, the second, to the administrative provision of a license issued by the State.

The case law in the State of New York has established the principle of the separability of actions and has decided that the license may be revoked although defendant is acquitted of the charge of driving under the influence of intoxicating liquor, if he refuses to submit to the chemical test. Likewise, it has established that the license should not be revoked when the evidence is insufficient to show that defendant refused to have the sample taken: 4 New York Jurisprudence 72–73, § 61 (The Lawyers Co-operative Publishing Company of 1959 edition). As to the last particular, this Court has decided in a similar sense: *Rodríguez* v. *Secretary of Public Works, ante,* p. 245.

The decision will be reversed.

Mr. Justice Santana Becerra agrees and also states his additional grounds in a separate opinion.

---

MR. JUSTICE SANTANA BECERRA, concurring.

In concurring in the decision of this case I wish to set forth the following considerations which in my opinion justify the additional ruling which must be established, and to which I will refer below.

There is no factual evidence in the record of the trial court nor in that of this Court, that defendant refused to submit to an analysis of his blood or urine. Neither is there any stipulation of the parties in this sense. It is true that in the decision which we reviewed, the trial court stated that the justice of the peace who determined probable cause seized defendant's license "when the latter refused to submit to the

chemical analysis which was required." We ignore the source because the stenographic record wherein the incident was discussed respecting the return of the license by reason of unconstitutionality of the legal provision by virtue of which it was taken from him does not contain any statement on that score. However, in the petition for certiorari, as well as in his brief to this Court, the Solicitor General sets forth that defendant refused to have a blood or urine sample taken, and starting from that situation of facts he discusses the pertinent issues. Defendant has neither accepted nor denied those statements of the trial court and of the Solicitor General, and the fact remains that his license was actually taken from him when probable cause was determined. I presume, therefore, that that was what happened, for otherwise, if there would have been no refusal to submit to the analysis the trial court could have disposed of the incident without having to touch on the question of constitutionality.[1]

But before I proceed I have seen fit to dispel a doubt which has lurked in my mind as to the interpretation of the legal provision attacked herein as unconstitutional, which is § 5-804 (b) of Act No. 141 of July 20, 1960—Vehicle and Traffic Law—after the amendment to said section by Act No. 94 of June 21, 1961. Upon evaluating the constitutional contention to be decided, there is a fact which is to me of fun-

---

[1] In a brief before the trial court defendant set forth the facts which he later reproduced in the brief to this Court as follows: "Defendant (opponent herein) Juan Carrión Díaz, 42 years of age, married, with children, and engaged as a bus driver, lawfully appeared in person at police headquarters in Caguas in the Sunday morning of March 11, 1962, for the purpose of requesting information as to a complaint filed by a neighbor against him. From there he was taken to jail after being charged with two offenses of disturbance of the peace: one committed on 'the way out to Gurabo' and the other 'in the detention room of police headquarters of Caguas,' and also for the offense of driving while intoxicated. (District Court, Criminal Nos. 62–508 and 62–523; Superior Court, Criminal No. N–62–98). Moreover, he was stripped of his working tools: the driving license, by virtue of the procedure provided by § 5–804 of Act No. 141 of 1960, and it was not returned to him in spite of his sincere and repeated protest."

damental importance, which goes to the very core of the problem, and that is whether this section requires that the judge who determines probable cause should immediately seize the license in all cases in which he determined that a vehicle has been operated while its driver was intoxicated, although the arrested person has not made any objection to submit to the chemical analysis, or whether it authorizes such seizure only in those cases in which, upon determining probable cause, the arrested person has refused to submit to the examination. Further on I will set forth the importance which each interpretation has in my opinion.

Section 5–804 of the Vehicle and Traffic Law, which the legislator entitled *"Procedure to be followed when arrested person refuses to submit himself to the chemical analysis,"* provided in its paragraph (a) that any person held under the charge of driving a vehicle under the influence of intoxicating liquor may refuse to submit to the chemical analysis. According to paragraph (b) if the arrested person refuses to submit to the analysis, it shall not be made, and he shall be taken before a judge. The judge shall take the sworn testimony which the aforesaid paragraph mentions including those of any other interested persons or who witnessed the person arrested driving or operating the motor vehicle under the influence of intoxicating liquor, and if he found probable cause, he shall order the filing of the corresponding complaint or information and he shall issue an order of commitment, *and shall forthwith seize his driving license.* According to paragraph (c) of § 5–804, at the time of the trial the judge shall order the suspension of the license for a term of not more than two years whenever he determines from the evidence that defendant *was not justified* in refusing to submit to the chemical analysis.

Section 5–804 as originally approved in 1960 does not leave the slightest doubt that the seizure of the driving license in the act of determining probable cause lay only and ex-

clusively in those cases in which the arrested person had refused to submit to the chemical analysis. But due to the amendment to paragraph (b) of § 5–804 of Act No. 94 of 1961, the pertinent part then provided as follows:

"In all cases, if the judge considers there exists probable cause of the commission of the offense by the arrested person, he shall issue the proper order of commitment and shall forthwith seize his driving license."

As in the original provision, this legislative expression is part of § 5–804 itself, wherein the lawmaker established the procedure to be followed when the arrested person refuses to submit to the analysis. In other words, the doubt arose from the phrase *"in all cases"* which appears with the amendment of 1961, as to whether the intention of the lawmaker was that the license would be seized in all cases in which the judge determined probable cause for driving while intoxicated, whether or not the arrested person refused or submitted to the chemical analysis, or if, on the contrary, it would be seized only in cases of refusal, as in the original provision. The legislative history of Act No. 94 of 1961, which was H. B. 270, the Report of its Juridical Committee, and the legislative debate during the process of its approval, have dispelled every doubt I had to that effect, and it is my opinion that even after the amendment of 1961, the seizure of the license upon determining probable cause was authorized, as in the original Act, only in those cases in which the arrested person has refused to submit to the chemical analysis. The meaning of the phrase *"in all cases"* and the intention of the legislator became perfectly clear to me from the legislative process.

The main objective of H. B. 270 was to give the prosecuting attorney the right to intervene in the initial stage of determining probable cause because it had already been provided that these cases of driving while intoxicated would be prosecuted before the superior court and not before the district court. House Bill 270 amended paragraph (c) of

§ 5–803 of the Act of 1960 to grant the *prosecuting attorney* as well as the judge, and police officers, authority to require the arrested person to submit to the analysis. Paragraph (h) of the aforesaid § 5–803 was also amended to the effect that the result of the chemical analysis would be sent to the corresponding district attorney instead of to the office of the clerk of the district court. House Bill 270 also amended paragraph (b) of § 5–804 to include the *prosecuting attorney*, besides the judge, as a person to whom the arrested person who has refused the analysis may be taken, thereby authorizing the prosecuting attorney as well as the judge, to make the investigations and take the sworn statement. It eliminated the provision which imposed the obligation upon the judge to order the filing of the complaint or information.

In the Report of the Juridical Committee of the House, respecting H. B. 270 it was stated:

"Section VIII of the Vehicle and Traffic Law provides the procedure for investigations in cases in which the persons arrested for the crime of driving or operating a vehicle under the influence of intoxicating liquor refuse to submit to the chemical analysis of their breath, blood or urine.

"    .        .        .        .        .        .        .        .

"Respecting the aforesaid procedure your Committee believes that prosecuting attorneys, who have by law the duty to make and sustain the charges in the Superior Court, should also have the power to require the arrested persons to submit to whichever chemical analysis of their blood, breath or urine, to receive the reports on the results of said analyses, and to take the sworn statements to which reference has been made.

"House Bill 270 provides that in cases where a prosecuting attorney takes such statements, if from the examination of the witnesses who testified it appeared that there was a violation of the provisions of the aforesaid Section VIII and that there is sufficient cause to believe that the arrested person is guilty of such violation, the prosecuting attorney shall submit to a judge the evidence which he had thus obtained so that the latter may determine probable cause of the offense. It also pro-

vides that probable cause shall be determined *in all cases* by the judge, who shall issue the corresponding order of arrest, in effect, and he shall forthwith seize the arrested person's driving license." (Italics ours.) Journal of Proceedings (House of Representatives), May 16, 1961, pp. 1250–1251.

Any remaining doubt as to the meaning of the phrase "in all cases" and that the original legislative intention to the effect that the license is seized only in cases where the driver refuses to submit to the analysis was not altered, is definitively dispelled with the reading of the debate of House Bill 270 in the hemicicle of the Senate. Said phrase was used to include those cases in which the judge intervenes as well as those in which the *prosecuting attorney* intervenes, since the latter is now authorized to do so. Journal of Proceedings (Senate), May 25, 1961, pp. 1605–1607.

For the purposes of evaluating the constitutional contention presented, the clarified fact is to me of unique importance, since the drastic act of seizing the license at the stage of determining probable cause would not primarily carry out the legislative intention of giving the public maximum protection by "freezing" and by immediately drawing from circulation a driver against whom probable cause has been found of driving while intoxicated. That it does not guarantee such immediate protection for the public is shown by the fact that the advanced stage of intoxication under which an arrested person had been driving is immaterial, because if he submits to the chemical analysis, the license is not seized immediately, and after furnishing the corresponding bail, that person, hours later, may again be driving a motor vehicle. The fact that the license may be seized merely because the arrested person did not submit to the chemical analysis destroys, in my opinion, the fundamental ground warranting such a strict and drastic measure, since as I have stated, the seizure of the license in such cases does not guarantee an immediate protection for the public. This is more so, after considering the fact that if the arrested person ac-

cepts or refuses to submit to an analysis is of little value at the stage of determining probable cause because the judge at that moment lacks the benefit of the result of said analysis.

Likewise, notwithstanding the foregoing, I am not in a position to hold that the provision challenged herein, which authorizes the immediate seizure of the license is wholly devoid of reasonable basis. It has the desirable effect of discouraging the refusal to submit to the analysis, where there is no justification, considering that the analysis may later be useful to the State in the trial for the crime of driving while intoxicated.

In harmony with the foregoing it is clear to me that the immediate seizure of the license in such cases has a meaning and the effect of a punishment for refusing the analysis when it has not yet been determined whether or not there was valid justification for the refusal.

It is the duty of the courts to make every possible effort to sustain the constitutionality of a statute. On the other hand, it is also the duty of the courts, where public interest collides with individual interest of the citizen, to try to find the formula for the reconciliation of those interests, protecting both and avoiding, whenever possible, that one destroys the other. With these criteria in mind, and considering that in those cases which are prosecuted in the superior court, a prosecuting attorney has up to 60 days to prefer charges and the court has an additional period of 4 months to hold the trial during the permissible prescriptive term, besides the justified delays which may take place, before adjudging the fact of whether or not there was justification on the part of the arrested person to refuse to submit to the analysis, I understand, that for the due protection of that defendant, among other guilty ones, who in the long run may be innocent of the charge of having refused to submit to the analysis without justification, the Court should give an order to the Superior Court to hold a hearing as soon as a defendant

from whom a license has been taken, so requests, even when the information has not yet been filed, in order to determine, after hearing the parties and in the light of the evidence introduced, whether or not the defendant was justified in refusing to submit to the analysis, and if the Superior Court decides that he was, his license should be returned immediately, leaving pending the other proceedings on the commission of the crime to be disposed of at the proper time. I believe that the aforesaid rule is necessary to liberate the provision of law attacked herein as unconstitutional from a sense of oppression and injustice in the case of an innocent party. I shall not enter into a sterile discussion as to whether the license to drive motor vehicles is a right or a privilege, although nobody, of course, is born with the natural right to be a driver, but it would be shutting our eyes to our present reality if we were to ignore that the enjoyment of the authority to drive motor vehicles, once such right has been legally obtained, does not have today the same meaning which it might have had when the automobile was merely used for the family's pleasure on holidays.

Upon reversing the judgment I would instruct the trial court that if that license is still seized, it should immediately hold a hearing to determine whether or not there was justification to refuse to submit to the chemical analysis, if that was a fact, and if the matter had not been already definitively disposed of.