## WALL v. KING.

No. 4725.

United States Court of Appeals
First Circuit.

July 31, 1953.

Herbert E. Tucker, Jr., Boston, Mass. (George P. Lordan and Cardozo, Lordan, Katz & Tucker, Boston, Mass., on brief), for appellant.

Henry M. Leen, Sp. Asst. to Atty. Gen. of Commonwealth of Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

William F. Wall, having had a motor vehicle driver's license suspended by action of the Massachusetts Registrar of Motor Vehicles—which license was subsequently restored to him by decree of the Supreme Judicial Court—filed in the United States District Court for the District of Massachusetts a complaint against the registrar, seeking damages in tort in the sum of $10,000.

The complaint is founded upon 8 U.S. C.A. § 43 reading as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The foregoing provision was derived from Rev.Stat. § 1979 which, in turn, was derived, with some embellishments not now material, from § 1 of the old Civil Rights Act of April 20, 1871, 17 Stat. 13, entitled "An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes." The jurisdiction of the court

below to entertain the civil action rests upon 28 U.S.C. § 1343(3); or, since more than $3000 is claimed in the *ad damnum*, the jurisdiction may be rested upon the more general provision of 28 U.S.C. § 1331.

The complaint alleged that on July 31, 1951, "in utter and complete disregard and violation of the constitutional and legal rights" of the plaintiff, the defendant in his capacity as Registrar of Motor Vehicles "did without a hearing suspend the license of the plaintiff to operate a motor vehicle upon the roads of the Commonwealth of Massachusetts"; that by virtue of the suspension order plaintiff surrendered his license to the defendant and thereafter was unable to operate his motor vehicle; that as the result of such deprivation, without due process of law, of plaintiff's right to operate a motor vehicle, he was unable to pursue his occupation of salesman, all to his great damage. The complaint further alleged that on August 9, 1951, plaintiff applied to the defendant for a reissuance of his license, which the defendant did deny; whereupon plaintiff took his case to the courts of Massachusetts, and the Supreme Judicial Court on May 29, 1952, held that the registrar was not justified in suspending the plaintiff's license and ordered the same restored to him, which was done on or about June 15, 1952.

Since the complaint referred to the decision of the Supreme Judicial Court, we have looked to that case for amplification of what happened. Wall v. Registrar of Motor Vehicles, 1952, 329 Mass. 70, 106 N.E.2d 425.

The registrar suspended the driver's license pursuant to Mass.G.L. (Ter.Ed.) c. 90, § 22, as amended. That section authorizes the registrar to suspend, without a hearing, a license to operate motor vehicles "whenever he has reason to believe that the holder thereof is an improper or incompetent person to operate motor vehicles, or is operating improperly or so as to endanger the public". Such license shall not be reissued "unless, upon examination or investigation, or after a hearing, the registrar determines that the operator should again be permitted to operate." It is fur-

ther provided that upon such suspension of a driver's license, the registrar shall forthwith send written notice thereof to the licensee, and that such notice, "in case of the suspension of a license to operate a motor vehicle because of the improper operation thereof, shall specify the time and place of such improper operation." Section 28 of the act provides that any person aggrieved by a ruling or decision of the registrar may, within ten days thereafter, appeal therefrom to the board of appeal, which board may, after a hearing, order such ruling or decision to be affirmed, modified or annulled; "but no such appeal shall operate to stay any ruling or decision of the registrar."

It appears that the suspension notice which the registrar sent on July 31, 1951, stated that "it has been reported officially to me that you operated a motor vehicle after drinking intoxicating liquor, on July 7, 1951, in Cambridge." After the registrar's denial of August 9, 1951, of the application for return of the license, Wall appealed to the board of appeal from this official ruling. On September 11, 1951, the appeal was heard by the board. At this hearing no further evidence was introduced by the registrar in explanation of his official action; nor did Wall offer any evidence, he being content to rest upon the point that as a matter of law the ground recited in the registrar's notice was not sufficient to warrant a suspension of the driver's license. At no stage in the state proceedings, nor in the present complaint, has Wall claimed either (1) that the registrar had not in fact received any official report that Wall had operated a motor vehicle after drinking intoxicating liquor, on July 7, 1951, in Cambridge; or (2) that such official report was untrue. On September 14, 1951, the board of appeal entered an order affirming the decision of the registrar.

Thereafter Wall filed in the Superior Court for the County of Middlesex a petition for a writ of certiorari quashing the order of the board of appeal. The Superior Court entered judgment dismissing the petition as a matter of law. On appeal, the Supreme Judicial Court on May 29,

1952, reversed the judgment of the Superior Court, and directed the entry of judgment quashing the order of the board of appeal and ordering entry by that board of an order annulling the decision of the registrar denying the application of the petitioner for reissuance of his license.

The Supreme Judicial Court did not rest its decision upon any constitutional ground, but took the view that under the facts stated the registrar was not warranted, under the authority of § 22, in suspending the driver's license. This appears from the following discussion in the opinion:

"The cause for the suspension of the petitioner's license by the registrar was stated in the notice. This notice did not state that the holder of the license was an improper or incompetent person to operate motor vehicles or that the licensee did operate so as to endanger the public. It apparently referred to 'improper operation' as that is the only reason for suspension respecting which the statute requires a statement in the notice of 'time and place.' Wide discretion is vested in the registrar as to the revocation or suspension of licenses of persons who operate motor vehicles on the public ways, but his discretion is not to be exercised arbitrarily or without regard to the purpose for which his authority to revoke or suspend is granted. The operation of a motor vehicle by one under the influence of intoxicating liquor is a criminal offence, G.L. (Ter. Ed.) c. 90, § 24(1) (a, b), as amended, and on conviction of such offence the revocation of the offender's license is required. Here no assertion of the operator's intoxication was stated in the registrar's notice. The intoxicating liquor alleged to have been consumed so far as it appears might have been of trivial amount, and have been taken at a time substantially earlier than the operation of the motor vehicle on July 7, 1951. From the facts stated in the notice, the registrar did not, in our opinion, have 'reason to believe' that the licensee was operating improperly

on that date. He was therefore not justified in suspending the petitioner's license." [329 Mass. 70, 106 N.E.2d 427]

Wall having got back his driver's license by order of the highest court of the state, it remains to consider whether he can maintain a federal tort action against the registrar, under 8 U.S.C.A. § 43, to recover damages sustained by reason of the improper suspension of his license. The court below granted a motion by defendant to dismiss the complaint for failure to state a claim upon which relief could be granted, and this appeal is from the ensuing judgment of dismissal, 109 F.Supp. 198.

Section 1 of the Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Section 5 of the same Amendment gives Congress power to enforce these prohibitions by appropriate legislation. It was in pursuance of that authority that Congress enacted the Civil Rights Act of April 20, 1871, 17 Stat. 13.

■ It is clear that the complaint does not set forth the abridgement of any privilege or immunity possessed by the plaintiff as a citizen of the United States, within the meaning of the first clause quoted above from § 1 of the Fourteenth Amendment. In re Slaughter-House Cases, 1872, 16 Wall. 36, 21 L.Ed. 394; Hendrick v. State of Maryland, 1915, 235 U.S. 610, 624, 35 S.Ct. 140, 59 L.Ed. 385. See Hague v. CIO, 1939, 307 U.S. 496, 518 et seq., 59 S.Ct. 954, 83 L.Ed. 1423, opinion by Mr. Justice Stone. As to denial of the equal protection of the laws, the plaintiff does not even claim that; and the cases make clear that such a claim would be unfounded. Snowden v. Hughes, 1944, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497; Everlasting Development Corp. v. Sol Luis Descartes, 1 Cir., 1951, 192 F.2d 1, 7, certiorari denied 1952, 342 U.S. 954, 72 S.Ct. 626, 96 L.Ed. 709. The remaining

question is whether the complaint sets forth an unconstitutional deprivation by the state of life, liberty, or property without due process of law.

Appellee oversimplifies this latter issue by stating that obviously "no question of the plaintiff's life or liberty is involved here"; and then by arguing that plaintiff could not have suffered any deprivation of "property", because a license to operate a motor vehicle is in the nature of a personal privilege and is in no sense "property" or a property right within the meaning of the due process clause. In thus dismissing the word "liberty" from consideration, appellee apparently supposes that the only liberty protected by the due process clause is freedom from imprisonment of the person. But that is clearly not so. In Allgeyer v. State of Louisiana, 1897, 165 U.S. 578, 589, 17 S.Ct. 427, 431, 41 L.Ed. 832, the Court said:

> "The 'liberty' mentioned in that amendment means, not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation; and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned."

In fact it is under that enlarged connotation of the word "liberty" that the fundamental guaranties of freedom of speech, freedom of religion, and freedom of the press expressed in the First Amendment have been imported into the due process clause of the Fourteenth Amendment as a limitation upon the states. Grosjean v. American Press Co., Inc., 1936, 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660; De Jonge v. State of Oregon, 1937, 299 U.S. 353, 364, 57 S.Ct. 255, 81 L.Ed. 278; Hague v. CIO, 1939, 307 U.S. 496, 519, 59 S.Ct. 954, 83 L.Ed. 1423; Schneider v. State of New Jersey, 1939, 308 U.S. 147, 160, 60 S. Ct. 146, 84 L.Ed. 155. See also Smith v. State of Texas, 1914, 233 U.S. 630, 636, 34 S.Ct. 681, 58 L.Ed. 1129.

■ Therefore it is unimportant whether, for one purpose or another, a license to operate motor vehicles may properly be described as a mere personal privilege rather than a property right. We have no doubt that the freedom to make use of one's own property, here a motor vehicle, as a means of getting about from place to place, whether in pursuit of business or pleasure, is a "liberty" which under the Fourteenth Amendment cannot be denied or curtailed by a state without due process of law.

■ No doubt the prohibitions of the Fourteenth Amendment are limitations on the states alone and not on actions of private individuals as such. United States v. Cruikshank, 1875, 92 U.S. 542, 23 L.Ed. 588; State of Virginia v. Rives, 1879, 100 U.S. 313, 318, 25 L.Ed. 667; In re Civil Rights Cases, 1883, 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835; Shelley v. Kraemer, 1948, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161; Collins v. Hardyman, 1951, 341 U.S. 651, 658, 71 S.Ct. 937, 95 L.Ed. 1253. Superficially, therefore, it might have seemed that in this case the *state* could not have deprived the plaintiff of any constitutional right, since it has been adjudicated by the highest court of the state that the action which the registrar took was not authorized by state law.

■ But states can act only through human beings; and it has long been settled that when a state clothes an individual with official authority, and the official commits an abuse of power in the exercise of that authority, his action in the name of the state is state action within the meaning of the prohibitions of the Fourteenth Amendment, even though what he did was not authorized by the laws of the state. Ex parte Commonwealth of Virginia, 1879, 100 U.S. 339, 346–349, 25 L.Ed. 676. And we think it is established also, whatever

may have been the original force of argument for a more restricted statutory interpretation, that action taken by a state official in the purported exercise of authority conferred upon him by the state is action "under color of" a statute, ordinance, regulation, custom or usage, of the state, within the meaning of 8 U.S.C.A. § 43, even though the action was not authorized, or indeed was prohibited, by state law. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." United States v. Classic, 1941, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368. To the same effect see Screws v. United States, 1945, 325 U.S. 91, 107 et seq., 65 S.Ct. 1031, 89 L.Ed. 1495; Williams v. United States, 1951, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774.

If therefore the official action of the registrar in suspending plaintiff's license must be deemed state action within the meaning of the Fourteenth Amendment and of 8 U.S.C. § 43, it is manifest that the plaintiff was not thereby deprived *by the state* of any right or privilege secured by the Fourteenth Amendment, unless the state could not, consistently with the requirements of due process of law, have authorized the registrar to do what he did.

■ Liberties are not absolute. "Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interest of the community." Chicago, B. & Q. R. R. Co. v. McGuire, 1911, 219 U.S. 549, 567, 31 S.Ct. 259, 262, 55 L.Ed. 328. What is a reasonable regulation or prohibition imposed by the state in the exercise of its police power depends very much upon the nature of the particular liberty affected. Speaking of the power of a state legislature to impose restrictions upon freedom of contract consistently with the due process clause of the Fourteenth Amendment, the Court said in West Coast Hotel Co. v. Parrish, 1937, 300 U.S. 379, 391, 57 S.Ct. 578, 581, 81 L.Ed. 703:

"What is this freedom? The Constitution does not speak of freedom of contract. It speaks of liberty and prohibits the deprivation of liberty without due process of law. In prohibiting that deprivation, the Constitution does not recognize an absolute and uncontrollable liberty. Liberty in each of its phases has its history and connotation. But the liberty safeguarded is liberty in a social organization which requires the protection of law against the evils which menace the health, safety, morals, and welfare of the people. Liberty under the Constitution is thus necessarily subject to the restraints of due process, and regulation which is reasonable in relation to its subject and is adopted in the interests of the community is due process."

■ The essence of the plaintiff's claim of denial of due process seems to be that his license was suspended by the registrar "without a hearing". The statute does not require the registrar to give such a hearing prior to suspension of a license "whenever he has reason to believe that the holder thereof is an improper or incompetent person to operate motor vehicles, or is operating improperly or so as to endanger the public". The information upon which the registrar acts may turn out to be erroneous; and so, in protection of motorists, the law provides for a hearing by the registrar upon an application for reissuance of the license, with administrative review of the registrar's action by a board of appeal, and ultimately review in the courts. We have no doubt that these provisions of law are reasonable regulations in the interest of safeguarding lives and property from highway accidents. The incidental hardship upon an individual motorist, in having his license suspended pending investigation and review, must be borne in deference to the greater public interest served by the statutory restriction. It is well-settled that the concept of due process of law does not necessarily require the granting of a hearing prior to the taking of official action in the exercise of the police power. North American Cold Storage Co. v. City of Chicago, 1908, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195. In Yakus v. United States, 1944, 321 U.S. 414, 442,

64 S.Ct. 660, 676, 88 L.Ed. 834, numerous other cases are cited in support of the proposition "that when justified by compelling public interest the legislature may authorize summary action subject to later judicial review of its validity."

There is much present-day controversy as to the extent to which the drinking of alcoholic beverages may put a person "under the influence" of intoxicating liquor so as to impair appreciably his ability to drive a car safely. Is it one drink, or two, or three? How long before the effect wears off? No doubt there are questions of degree, and variations dependent upon the individual imbiber. It is common knowledge that many persons, to avoid all possibility of argument, have adopted as a rule of conduct that they will not drive a car after taking a drink. This rule of conduct has even been recommended in current liquor advertisements ("If you are going to drive, don't drink, and if you drink, don't drive", or words to that effect).

It seems to us that the state, in promotion of highway safety, and in order to avoid close issues of fact as to the extent of the "influence" of intoxicating liquor in a particular case, might constitutionally write this rule of conduct into law. See Jacob Ruppert, Inc., v. Caffey, 1920, 251 U.S. 264, 299, 40 S.Ct. 141, 64 L.Ed. 260. The state might have made it a misdemeanor to drive a car after taking a drink of intoxicating liquor. It might have enlarged the scope of G.L., c. 90, § 22, so as to authorize the registrar to suspend a driver's license whenever he has reason to believe that the licensee operated a motor vehicle after drinking intoxicating liquor.

The state legislation has not gone this far, but it constitutionally could. Therefore the deprivation of which the plaintiff complains, resulting from the action of the registrar taken in the name of the state, is not the deprivation of any right or privilege secured by the Fourteenth Amendment against state action.

The judgment of the District Court is affirmed.