Andrew **POLLION** et al., Plaintiffs,
v.
John W. **LEWIS**, Secretary of State of
Illinois,* et al., Defendants.
No. 69 C 330.

United States District Court,
N. D. Illinois, E. D.
Nov. 25, 1970.

---

* Pursuant to the provisions of Rule 25(d) (1) of the Federal Rules of Civil Procedure, this Court has substituted defendant Lewis as successor in office to former defendant Paul Powell, recently deceased.

David Kahn, Chicago, Ill., Legal Aid Bureau, for plaintiff.

William J. Scott, Atty. Gen., Chicago, Ill., for defendant.

Before CUMMINGS, Circuit Judge, ROBSON, Chief District Judge, and PERRY, District Judge.

## OPINION AND ORDER

CUMMINGS, Circuit Judge.

Plaintiffs initiated this class action on behalf of themselves and all persons whose drivers' licenses or vehicle registrations have been revoked due to the operation of the Illinois Financial Responsibility Law. Ill.Rev.Stat. 1969, Ch. 95½, § 7A–101 et seq.[1] They seek a dec-

---

1. Section 7A–101 et seq. amended and replaced the previous Financial Responsibility Law under the 1957 Illinois Motor Vehicle Law, Ch. 95½, § 7–101 et seq. Since the inception of this action, additional amendments have been made, effective July 1, 1970, and July 1, 1971. For the purposes of this action, the

laration that certain provisions of that statute are unconstitutional on their face and as applied.[2] They request the restoration of their drivers' licenses and vehicle registrations. Finally, they ask that defendants Lewis and Cellini, state officials charged with administration and enforcement of the statute, be enjoined from future enforcement of these provisions. Plaintiffs moved for the convention of a three-judge court in accordance with 28 U.S.C. § 2281, and on July 15, 1969, that motion was granted. At the same time, defendants' cross motion for dismissal of the complaint was denied. Pollion v. Powell, 47 F.R.D. 331 (N.D.Ill.1969).

The relevant facts alleged in this complaint are not complicated and may be briefly summarized. Each of the original representative plaintiffs was himself involved or owned a motor vehicle which was involved in an automobile accident. Intervening plaintiff Kalec alleges that he was falsely accused of operating a vehicle which supposedly struck a pedestrian. In each instance another party in the accident filed an accident report with the Department of Public Works and Buildings claiming injury or damages exceeding $100. No plaintiff was adjudged liable for damages arising from the accidents, and in four instances, police reports concerning the accidents indicate unequivocally that they or persons driving their cars were victims of the accidents rather than culpable parties. None of the plaintiffs carried automobile liability insurance, although each was licensed to operate on Illinois highways and several owned properly registered automobiles.

As a result of their involvement in the accidents and their lack of insurance, each plaintiff was ordered to post security, in amounts varying from $600 to $2,300. Each plaintiff was also required to supply proof of future financial responsibility. They were unable to satisfy both of these demands, and their inability resulted in suspension of their driving privileges. They have all requested hearings before the appropriate state agencies, and in each instance they were either ignored or their request was denied. As a result of their inability to operate a motor vehicle legally, they claim to have suffered irreparable harm due to their loss of needed mobility.

The current Financial Responsibility Law follows a long succession of similar statutes in Illinois as well as in other states which have attempted to cope with the many difficult problems posed by automobile traffic. See Kesler v. Department of Public Safety, etc., of Utah, 369 U.S. 153, 82 S.Ct. 807, 7 L. Ed.2d 641. The rules governing financial responsibility of automobile owners and operators comprise one portion of the comprehensive Illinois vehicle code directed toward public health and welfare in automobile traffic. Ill.Rev.Stat. 1969, Ch. 95½. Complex licensing and registration requirements protect the public against imprudent and unsafe motorists. The Financial Responsibility Law, on the other hand, is directed to preventing or limiting the financial and economic hardships which often attend highway accidents. This measure encourages and tests the adequacy of financial resources available for coverage of potential losses resulting from accidents. The statutory scheme is thus addressed both to the protection of those already involved in accidents and to prevention of financial irresponsibility among parties to future mishaps.

The basic provisions of the statute are the requirements of security deposits in the event of an accident and proof of financial responsibility for the future. Satisfaction of these requirements is en-

---

provisions are substantially identical. Where pertinent, the changes not yet effective shall be noted. The statutory references refer, however, to the currently effective amendments, enacted by P.A. 76–1616, effective July 1, 1970.

2. Plaintiffs specifically relate their challenge to Ill.Rev.Stat.1969, Ch. 95½, §§ 7–201, 7–202, 7–205.

forced by the sanction of suspension of operator's license and vehicle registration.

The specific administrative machinery of the statute begins when the Department of Public Works and Buildings receives the report of an accident involving death, personal injury, or property damage in excess of $100.[3] If the Department finds that death, personal injury, or more than $250 damage to property has been sustained, the Department must determine whether the particular owner or operator is one to whom the provisions of the Act apply. Section 7–202 expressly excepts from the require-

ments of the Financial Responsibility Law a wide range of vehicle owners and operators who present no immediate threat of financial irresponsibility, including those with adequate existing insurance or bonding arrangements and those for whom there is no realistic contingency of liability resulting from the particular accident.[4]

Having determined the applicability of the Act's requirements, the Department must certify to the Secretary of State the name of each such operator or owner and the amount of security deemed necessary. Ill.Rev.Stat.1969, Ch. 95½, § 7–201. The purpose of this secu-

---

3. Reports must be filed by motorists under such circumstances within ten days of any such accident. Ill.Rev.Stat.1969, Ch. 95½, §§ 11–406, 11–410. The most recent amendments, effective July 1, 1971, require these reports to be filed with the Secretary of State rather than the Department of Public Works and Buildings. These amendments have consolidated the administration of the Financial Responsibility Law within the office of Secretary of State and have eliminated generally the role of the Department of Public Works.

4. The provisions of Section 7–202 pertinent to this case state:

 *"Exceptions to Requirements of Security and Proof of Financial Responsibility for the Future*

 "The requirements as to security, proof of financial responsibility for the future and suspension as provided by Sections 7–201 and 7–205 of this Act shall not apply:

 "1. To the driver or owner if such owner had in effect at the time of such accident a liability policy covering such driver and owner with respect to the motor vehicle involved in such accident;

 "2. To the driver, if not the owner of such motor vehicle, if there was in effect at the time of such accident a liability policy or bond with respect to his operation of motor vehicles not owned by him;

 "3. To the driver or owner if the liability of such driver or owner for damages resulting from such accident is, in the judgment of the Department of Public Works and Buildings, covered by any other form of liability insurance policy or bond;

 \*　　\*　　\*　　\*　　\*

"8. To the driver or the owner of a motor vehicle involved in an accident wherein no injury or damage was caused to the person or property of any one other than such driver or owner;

"9. To the driver or the owner of a motor vehicle which at the time of the accident was parked, unless such vehicle was parked at a place where parking was at the time of the accident prohibited under any applicable law or ordinance.

"10. To the owner of a motor vehicle if at the time of the accident the vehicle was being operated without his permission, express or implied, or was parked by a person who had been operating such motor vehicle without such permission.

"If at the time of the accident, an owner or driver is covered by a motor vehicle liability policy or bond meeting the requirements of this Act, such owner or driver shall be exempt from suspension under Section 7–205 as to that accident, if the company issuing the policy or bond has failed, and such policy or bond was not effective at the time of the accident or any time thereafter, provided, that the owner or driver had no knowledge of the company's failure prior to the accident, and such owner or driver has secured within 30 days after learning of such failure another liability policy or bond meeting the requirements of the Act relating to future occurrences or accidents.

"As used in this subsection, the words 'failed' or 'failure' mean that the company has suspended operations by order of a court of record."

rity, as expressly stated in the Act, is to insure satisfaction of any judgment or judgments greater than $200 against that operator of registrant which might arise from the accident. Ill.Rev.Stat. 1969, Ch. 95½, §§ 7–201(2), 7–204(A). The Act provides, however, that the deposit required may be in any form demanded by the Secretary of State and shall not exceed the minimum limits for an acceptable insurance policy or bond. Ill.Rev.Stat.1969, Ch. 95½, § 7–204(A).

The Financial Responsibility Law relieves a motorist or vehicle owner from his obligation to post security where it is not necessary to cover contingent liability. Thus a person is released when the Secretary receives proof of a release from liability (Section 7–206(A)), a covenant not to sue (Section 7–206(B)), evidence of a final adjudication of nonliability (Section 7–207), a written agreement among the parties to the accident to pay all claims for injuries or damages in installments (Section 7–208), or payment of a judgment arising from the accident (Section 7–209). Ill. Rev.Stat.1969, § 7–206 et seq. Finally, if the Department's security demand is excessive, Section 7–212 permits a redetermination and reduction of the amount and a refund of the remainder of the deposit. Ill.Rev.Stat.1969, Ch. 95½, § 7–212.

The requirement of proof of future financial responsibility operates independently as well as in conjunction with the security requirement. The statute ties this enforcement feature to the administrative machinery activated by the remedial or protective security requirements. Release from the obligation to deposit security thus does not relieve the motorist or registrant from the burden of demonstrating future financial responsibility. Ill.Rev.Stat.1969, Ch. 95½, §§ 7–206 through 7–210. As required under Article III of the Act, "proof of financial responsibility for the future" means

" * * * proof of ability to respond in damages for any liability thereafter incurred resulting from the ownership, maintenance, use or operation of a motor vehicle for bodily injury to or death of any person in the amount of $10,000, and subject to said limit for any one person injured or killed, in the amount of $20,000 for bodily injury to or death of two or more persons in any one accident and for damage to property in the amount of $5,000 resulting from any one accident. Such proof in said amounts shall be furnished for each motor vehicle registered by every person required to furnish such proof." Ill.Rev.Stat.1969, Ch. 95½, § 7–302, as referred to in § 7–204(C).

According to Section 7–314 and the following applicable provisions of Article III, this proof may be furnished by properly filing with the Secretary of State an acceptable certificate of motor vehicle liability insurance, a duly executed liability bond, or by depositing equivalent money or securities with the State Treasurer. Ill.Rev.Stat.1969, Ch. 95½, § 7–314 et seq.

Loss of vehicular privileges results from failure to fulfill either or both of the statute's financial responsibility requirements. Within 30 days after receipt of the Section 7–201 certificates and 10 days after giving adequate notice, the Secretary of State automatically suspends the license and/or registration of any operator or vehicle owner who has not filed security and proof of future responsibility. Ill.Rev.Stat.1969, Ch. 95½, § 7–205.

The statute also contains provisions for administrative notices to affected individuals and hearing for aggrieved persons upon their demand. Section 7–201.1 requires the Department of Public Works and Buildings to supply detailed information to the security depositor of the nature of the potential claims upon which the security requirement is based. Ill.Rev.Stat.1969, Ch. 95½, § 7–201.1. Not less than 10 days prior to the effective date of any proposed suspension under Section 7–205, the Secretary of State is again required to send notice to the individual of the impending suspension which must include a statement of

the amount of security demanded.[5] Ill. Rev.Stat.1969, Ch. 95½, § 7–205(B). The aggrieved motorist may, moreover, obtain an administrative hearing upon request to review an order or act of either the Department of Public Works and Buildings or the Secretary of State. Ill.Rev.Stat.1969, Ch. 95½, § 7–101; see also, Ch. 95½, § 2–117.

Finally, according to Section 7–102, suspensions under Section 7–205 are subject to judicial review in any appropriate Circuit Court of the State as provided in the "Administrative Review Act" of Illinois. Ill.Rev.Stat.1969, Ch. 110, § 264 *et seq*. If lawfully ordered, the suspension may still be terminated in accordance with the provisions of the Financial Responsibility Law. Section 7–211 permits the operator or owner whose privileges have been suspended to regain them by satisfying the security and proof requirements ordered. After a year from the date the license or registration has been received by the Secretary following suspension, the applicant may terminate the suspension if he files an affidavit stating that no action for damages has been filed against him arising from the accident or, if filed, that the action is no longer still pending. Ill.Rev.Stat.1969, Ch. 95½, § 7–211; see also § 7–309.

I

Plaintiffs claim that the Financial Responsibility Law violates the Equal Protection Clause of the Fourteenth Amendment. They contend that each of the two features of the statute, the security deposit and the proof of future financial responsibility, establishes an irrational and arbitrary classification. Since these provisions operate administratively somewhat differently within the statutory scheme and perform independent functions, they deserve individual treatment.

A. The Security Deposit

Plaintiffs assert that the statute improperly requires security against contingent liability without any inquiry into fault or prospective liability on the part of the depositor. They further argue that vehicle owners or operators involved in accidents comprise only one small class of potentially liable persons. Relying upon Gulf, Colorado & Santa Fe Ry. Co. v. Ellis, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666, plaintiffs assert that the state may not single that class out for the imposition of security requirements. We do not agree.

State regulation of automotive operation for public health and safety has long constituted a matter of peculiar local sensitivity. Problems associated with highway safety are, in large measure, unique and clearly defined. No state could overlook the hazards associated with the ever increasing use of motor vehicles by an ever widening segment of the population. Special attention and special solutions to these hazards are often necessary and are entirely reasonable. See Continental Baking Co. v. Woodring, 286 U.S. 352, 365–366, 52 S.Ct. 595, 76 L.Ed. 1155; Hendrick v. Maryland, 235 U.S. 610, 622, 35 S.Ct. 140, 59 L.Ed. 385; cf. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091. Motor vehicle accidents are an ever present and serious hazard. They frequently, if not generally, result in personal injury or property loss for which liability exists. These considerations and the general importance of automotive transportation in modern life justify extensive governmental intervention in private liabilities to insure that losses sustained as a result of such accidents will be compensated in accordance with the law.

The requirement that persons involved in motor accidents must be able to satisfy any contingent liability aris-

---

5. Until July 1, 1970, Section 7A–205(B) required inclusion of notice of the necessity of proof of financial responsibility for the future. Under the 1969 and 1970 amendments this requirement has been dropped.

ing from such an accident is not unreasonable. The necessity of a security deposit is one of several alternative and supplementary measures calculated to achieve that end, including mandatory liability insurance or indemnity bonding. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152. The Constitution does not specify or limit solutions available to the state to accomplish these just purposes. Cf. Queenside Hills Realty Co., Inc. v. Saxl, 328 U.S. 80, 66 S.Ct. 850, 90 L.Ed. 1096. Imposition of this obligation without regard to fault in the specific accident is demanded by the realities of litigation and administrative necessity. The Department is not equipped to anticipate all possible claims or anticipate judicial resolution of each potential liability. Thorough protection of contingent claims does not permit a quick determination of fault. Moreover, an adequate determination of fault upon even a tentative basis would impose heavy administrative burdens upon the agency in the performance of even the most routine operations of the Act. In terms of the consumption of both time and resources, such determinations might destroy the value of the statutory protection contemplated by the Act. Certainly, securing the most complete protection for persons affected by highway accidents and maintaining administrative manageability are both legitimate state interests. Their balance in this case cannot be said to be unreasonable. See Dandridge v. Williams, 397 U.S. 471, 484–487, 90 S.Ct. 1153, 25 L.Ed. 2d 491; cf. Rinaldi v. Yeager, 384 U.S. 305, 310, 86 S.Ct. 1497, 16 L.Ed.2d 577.

■ We also reject plaintiffs' claim that the Act arbitrarily or unreasonably selects vehicle accidents for imposition of these special security requirements. The importance of state highway regulation, and the special features of highway accidents are relevant justifications for particular state concern with security deposits. Moreover, the fact that the state may provide for similar or identical security deposits in connection with other circumstances does not invalidate

its actions under this Act. A state may direct legislation against evils as it sees them without dealing with all possible abuses. Hughes v. Superior Court of California for Contra Costa County, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985. It need not press the limits of permissible legislation, or accomplish its aim in every instance. See Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369; Roschen v. Ward, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722; Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 487–488, 75 S. Ct. 461, 99 L.Ed. 563. Unlike Gulf, Colorado & Santa Fe Ry. Co. v. Ellis, 165 U.S. 150, 157–159, 17 S.Ct. 255, 41 L.Ed. 666, this legislation does not single out a single industry for the imposition of a penalty without regard for characteristics of the industry or the purposes of the penalty.

**B. The Proof of Financial Responsibility for the Future**

Plaintiffs also attack the provisions of the Act requiring proof of financial responsibility by motorists involved in automobile accidents. Plaintiffs contend that the statute does not require liability insurance of all drivers as a precondition to licensing or registration. Rather, they assert, the State imposes the requirement of insurance only upon those who drive or own cars involved in accidents without regard to fault or prospective liability. They argue that the only justifiable purpose of such a requirement is to assure financial responsibility for those likely to need it. They claim that mandatory purchase of insurance cannot be justified by mere involvement in an accident, regardless of fault, since that happenstance holds no indication of negligence or future liability.

■■ There is no question that a state may reasonably require vehicle owners and operators to be financially responsible. The State may fix such a requirement as a precondition to the issuance of a license or vehicle registration. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152. The requirement

becomes no less valid or reasonable, however, when divorced from the conditions of initial licensing or registration. Cf. Ill.Rev.Stat.1969, Ch. 95½, §§ 8–101 *et seq.* and 9–101 *et seq.* A state may reasonably choose to limit the scope of its inquiry at that time for several reasons, including administrative necessities or the desire to maximize the ability of citizens to enjoy the use of motor vehicles. Failure to require proof of this feature of vehicular responsibility as a condition to initial issuance of a license does not suggest that responsibility is not expected or demanded as a part of motor safety. The state may constitutionally demand observance of its requirement of financial responsibility to the same extent as it requires observance of other rules and regulations directed toward traffic safety. Continuation of a valid license may be conditioned upon satisfaction of such a requirement, just as it may be conditioned upon adherence to any other reasonable requirement such as sobriety of an operator. In each case, disregard of the rule becomes the condition subsequent leading to suspension or revocation of the license.

■ Contrary to plaintiffs' contentions, the Illinois Financial Responsibility Law does not demand maintenance of insurance or indemnity bonds [6] by only those who have been involved in an automobile accident. Unlike Smith v. Cahoon, 283 U.S. 553, 51 S.Ct. 582, 75 L. Ed. 1264, the statutory scheme discloses that Illinois law demands financial responsibility of all licensed drivers and registrants. By excepting financially responsible individuals from the statutory machinery, Section 7–202 reveals that the operation of the Act presupposes failure on the part of the person involved in the accident to comply with that requirement. Because of the initial determination by the Department that the individual cannot fulfill the expectation of financial responsibility, the Act

simultaneously requires security to protect other persons and compels future observance of the requirement by requiring proof of responsibility as a condition for continuation of the license. Certainly the reality of the requirement, regardless of the occurrence of the accident, is not negatived by the manner in which the statute expresses the requirement.

■ Nor does the statute violate equal protection in the manner in which it enforces and administers the requirement of financial responsibility. The statutory scheme ties together both the requirements of security deposit and proof of future financial responsibility. Proof of responsibility is sought initially from substantially all motorists or registrants involved in the accident for whom liability may be contingent. Ill. Rev.Stat.1969, Ch. 95½, §§ 7–201, 7–202. Those potentially liable persons who lack adequate available financial responsibility in accordance with the Act are then required to deposit security and supply proof of financial responsibility for the future.

After an accident, it is certainly reasonable for a state to conduct an inquiry into the financial status of any person involved in the accident or potentially liable as a consequence. Where the state finds that its responsibility requirements have been ignored, it is also reasonable for the government to act to remedy and correct the situation. A state violates no constitutional rule where, as here, it requires one found in noncompliance to demonstrate that he has brought himself within the rules as a condition to continuation of driving privileges.

Since the statute administers a general requirement of motorists, there is no need to limit proof of compliance to those motorists deemed most likely to be involved in future accidents. Indeed,

---

6. The third statutory alternative, deposit of equivalent security with the State Treasurer as provided under Ill.Rev.Stat. 1969, §§ 7–314(3), 7–323, and 7–329, re-

quires no different constitutional consideration, and applies to only a small *class* of motorists unwilling or unable to maintain insurance or indemnity bonding.

such a limitation upon the state's authority to demand proof of future financial responsibility from those who have been found lacking would fruitlessly undermine the policy of the requirement itself. Moreover, a state might reasonably choose to avoid the dubious benefit of attempting to predict future liability. A state could not postpone requiring proof until after the completion of some subsequent formal litigation. An attempt at speedy administrative determination of fault or liability would be equally unsatisfactory. It would impose imponderable administrative burdens. Such a proceeding would also be susceptible to error or inconsistency with possible later adjudication. Moreover, the value of an early administrative finding of fault or liability for one accident as a forecast to future driving conduct is itself questionable. A state might well conclude that such a decision would add little or nothing to the accuracy of a prediction based upon mere involvement in an accident.

 We conclude, therefore, that the challenged provisions of the Financial Responsibility Law do not arbitrarily impose financial responsibility requirements upon any class of licensees or registrants. The statutory scheme is reasonably related to a legitimate state interest in the financial security of motorists within its borders. The statute demonstrates an appropriate legislative attempt to harmonize these interests with the necessities of practical administration of highway safety standards. We agree with those courts which have previously upheld the constitutionality of this and similar statutory features against attack. Williams v. Newton, Fla., 236 So.2d 98; cf. Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21; Quetawki v. Prentice, 303 F.Supp. 737, 739 (D.C.N.M.1968); MacQuarrie v. McLaughlin, 294 F.Supp. 176 (D.C. Mass.1968), affirmed per curiam, 394 U.S. 456, 89 S.Ct. 1224, 22 L.Ed.2d 417; Perez v. Tynan, 307 F.Supp. 1235 (D.C. Conn.1969).

II

Plaintiffs also contend that the Financial Responsibility Law, both on its face and as applied, denies due process of law.

Regarding the statute itself, plaintiffs argue that the privilege of owning or operating a motor vehicle is a valuable right which may not be removed without a prior hearing. They argue that the factual determinations required of the Department of Public Works and Buildings as the basis for suspension are adjudicatory facts which may be determined only after such a hearing. We disagree.

 Regardless of the technical classification of drivers' licenses and vehicle registrations as "privileges" under state law, these interests are subject to the protections of the Due Process Clause of the Fourteenth Amendment. Wall v. King, 206 F.2d 878, 882 (1st Cir. 1953), certiorari denied, 346 U.S. 915, 74 S.Ct. 275, 98 L.Ed. 411. Due process does not, however, require a prior adversary hearing in all cases in which a significant private interest is jeopardized by government regulatory action. Bourjois, Inc. v. Chapman, 301 U.S. 183, 189, 57 S.Ct. 691, 81 L.Ed. 1027; see Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289; Cafeteria & Restaurant Workers Union, etc. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230; cf. Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287. The constitutionality of the particular statutory procedures must be determined after consideration of the interests at stake, both private and governmental, and the function and character of the evidentiary determinations which must be made.

The privilege of operation or ownership of a motor vehicle is unquestionably a substantial interest. Its enjoyment may, in practical terms, be a necessary adjunct to full enjoyment of many other fundamental rights. Without derogating from its importance, however, the right to own or operate a motor vehicle

cannot be equated with such necessities as welfare rights (Goldberg v. Kelly, 397 U.S. 254, 264, 90 S.Ct. 1011, 25 L.Ed.2d 287), wages (Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349), or employment itself (Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L. Ed. 692). The ability to utilize this particular means of mobility is also susceptible to equation to travel generally, whether international (cf. Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L. Ed.2d 1204) or interstate (Edwards v. California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119; Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600). Nor are protected constitutional rights and privileges adversely affected by this governmental action. Cf. Slochower v. Board of Higher Education, 350 U.S. 551, 557, 76 S.Ct. 637, 100 L.Ed. 692; Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817.

The state's interest, on the other hand, is also substantial. See Wall v. King, 206 F.2d 878 (1st Cir. 1953). Concededly, summary suspension in such cases is not necessary to protect against an imminent threat to the safety or welfare of the community. Cf. Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088; Cafeteria & Restaurant Workers Union, etc. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230. Assurance of financial responsibility on the part of motorists is, however, an important part of state regulation of motor vehicle transportation. See Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 26 L.Ed. 21; Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L. Ed. 152. The state's protection of the economic needs of motorists certainly merits great weight.

Most important, in this instance, are the nature of the factual determinations upon which suspension is based, and the statutory procedures of judicial review available to the aggrieved parties. The determinations made by the Department of Public Works and Buildings do not involve difficult questions of fault, which traditionally require extensive evidentiary inquiry, including confrontation of adversary witnesses, cross-examination, and the opportunity to present evidence. Cf. Goldberg v. Kelly, 397 U. S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287; Willner v. Committee on Character and Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224; Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377. Most factual issues are easily ascertainable, such as determinations of the actual ownership or operation of a vehicle and the applicability of the statutory requirements under Section 7–202. The most difficult factual determinations, involving the potential claims and amount of security deposit, are estimates and approximations. By their nature, they do not adapt to clear solution, and while adjudicative in nature, are not benefited by provision in each instance for a factual hearing at the administrative level.

The statute does not provide for determination of the security deposit to be made *in vacuo* or solely upon the *ex parte* information supplied in an adversary's accident report. Section 7–201 requires the determinations to be made independently by the Department "as soon as practicable after the receipt of [an accident] report." Such reports must, initially, be filed by all participating drivers. Ill.Rev.Stat.1969, Ch. 95½, § 11–406. Additional reports may be demanded from the drivers, witnesses or police officers. Ill.Rev.Stat.1969, Ch. 95½, §§ 11–406, 11–408. In those instances in which the information supplied is incomplete, inadequate, or contradictory, the Department must clearly pursue actual inspection of the persons or property damage involved, or otherwise independently determine the facts. Having completed its initial determinations, the Department must "send, by mail, to the person required to deposit security, an itemization of each potential claim of personal injury or property damage within the knowledge of the Department and upon which the determination of security required is based." Ill.

Rev.Stat.1969, Ch. 95½, § 7–201.1. Section 7–212 of the Law in turn permits the Department to reduce the amount of security ordered within 6 months after the date of the accident. Ill.Rev.Stat. 1969, Ch. 95½, § 7–212. Finally, Section 7–101 instructs the agencies here involved to "provide for hearings upon request of persons aggrieved by order or acts of the Department of Public Works and Buildings and of the Secretary of State under this Section." Ill.Rev.Stat. 1969, Ch. 95½, § 7–101; see also, Ch. 95½, § 2–117. Thus the aggrieved individual not only receives prompt notification of the results of the Department's investigation, but also he may object and receive administrative relief.

 These provisions will not permit a full adjudicatory hearing upon disputed facts prior to effective suspension. They do, however, provide for notice detailing the bases for the proposed deposit and suspension orders. Avenues exist through which the affected motorist may express his objections and be heard. These occur both prior to and after the Department's factual determination, both through access to a hearing and otherwise. At any stage in the administrative proceedings the suspension order might be administratively delayed or retracted. The Department's response to these objections and its final determinations are subject to immediate judicial review, including a stay of the decision, in the appropriate circuit court. Ill.Rev.Stat.1969, Ch. 95½, § 7–102; Ch. 110, §§ 264 *et seq.*; cf. Porter v. Investors Syndicate, 286 U.S. 461, 52 S.Ct. 617, 76 L.Ed. 1226. In light of the tentative and perforce approximate nature of the Department's highly discretionary determinations, the administrative measures available to those individuals involved, and the swift judicial review available, we conclude that the statutory scheme does not violate due process of law. See, *e. g.*, Larson v. Warren, 132 So.2d 177, 181 (Fla.S.Ct.1961, per curiam), appeal dismissed for want of a substantial federal question, 369 U.S. 427, 82 S.Ct. 879, 8 L.Ed.2d 7; Escobedo

v. State Department of Motor Vehicles, 35 Cal.2d 870, 222 P.2d 1 (1950); Adams v. City of Pocatello, 91 Idaho 99, 416 P.2d 46 (1966); cf. Wall v. King, 206 F.2d 878 (1st Cir. 1953); Perez v. Tynan, 307 F.Supp. 1235 (D.C.Conn. 1969); Quetawki v. Prentice, 303 F. Supp. 737 (D.C.N.M.1968); see generally, 1 Davis—on Administrative Law (Treatise), §§ 7.08–7.10 (1959).

 Although the statutory features themselves are adequate, it is evident that no attempt has been made by the state agencies responsible for administration of these provisions to effectuate the hearing and notice procedures. When hearings have been requested by aggrieved persons, they have been refused or ignored, regardless of the significance of the factual dispute presented. We have been apprised of the existence of no present hearing procedures which would satisfy the statutory command of Section 7–101. Ill.Rev. Stat.1969, Ch. 95½, § 7–101. Although that same Section permits these agencies to adopt regulations and rules which might fashion hearing procedures which would deal aptly with the specific issues for which a hearing would be necessary, no such action has been taken. Under such circumstances, it is clear that the conduct of the defendants in applying the challenged Financial Responsibility Law contravenes the statute.

### III

In accordance with the foregoing opinion, it is ordered and adjudged that:

1. The requested declaration that the Illinois Financial Responsibility Law is in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution is denied.

2. The requested injunction against further enforcement of the provisions of the challenged statute is denied.

3. Defendants are hereby ordered to effectuate and observe fully the provisions of the Illinois Financial Re-

sponsibility Law granting a hearing to aggrieved persons; in addition, defendants are ordered to present on remand to the single judge court proof that procedures have or are being established to implement compliance with this order.

4. Because of the nature of the class of potentially aggrieved persons under these statutory provisions, and because of the past inequities of the defendants in disregarding the statutory mandate of the Illinois Financial Responsibility Law, defendants are hereby ordered to include in the notice of suspension required pursuant to Section 7–205(B) of the Illinois Financial Responsibility Law (Ill.Rev. Stat.1969, Ch. 95½, § 7–205(B)) a complete statement informing the licensee or registrant of his rights to a hearing before the agency and to judicial review.

5. This Court is dissolved, and the case is remanded to the single judge court to effectuate this judgment and, if necessary, to award other appropriate relief.

ROBSON, Chief Judge (dissenting).

For the reasons set forth below, I am of the opinion that the challenged provisions of the Illinois Financial Responsibility Law are unconstitutional. Since these provisions are thoroughly described in the majority opinion, I shall restrict my discussion to the issue of constitutionality.

All of the representative plaintiffs or their automobiles were involved in accidents in which another motorist filed a report claiming injury or damages exceeding $100. None of the plaintiffs were ever adjudged liable for damages arising out of the accidents which were the cause of recovation of their driver's licenses or motor vehicle registrations. Police reports concerning the accidents of four of the plaintiffs indicate unequivocally that they or persons driving their cars were the *victims* of the accidents, while the claimants were actually at fault. All plaintiffs were required by the defendants to post security in amounts varying from $600 to $2,300, and were required to purchase financial responsibility insurance in compliance with the challenged provisions. The arbitrariness of the required security deposits is well demonstrated by two plaintiffs before this court. The plaintiff Sarah Taylor was required to post $2,300 security, although she was subsequently sued by the claimant for only $740. The plaintiff Harold Witt was required to post $850 security, although he later sued the claimant and *received* a $700 settlement.[1] Inability to produce the necessary funds resulted in the revocations of driver's licenses and motor vehicle registrations in issue here. The plaintiffs allege that they have suffered irreparable harm because of their consequent loss of mobility. The character of such harm varies from inability to continue in established employment requiring mobility to impairment of family recreational activities. It is undisputed that requests by the plaintiffs for hearings have been ignored or informally denied by the defendants. The defendants' decisions concerning the revocations in issue were made ex parte and were based solely upon the unverified accident reports of other motorists.

In this era of great mobility, driver's licenses and vehicle registrations are undeniably valuable interests. The importance of the right to own and operate an automobile to contemporary health, welfare and economic pursuits of life, and the constitutional necessity of a hearing and other procedural safeguards before revocation of this right, have been specifically recognized in recent years. Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136, 140 (1963); People v. Nothaus, 147 Colo. 210, 363 P.2d 180

---

1. Counsel for the plaintiffs also contended during the hearing on this matter that financial responsibility insurance is more expensive than ordinary automobile liability insurance. However, the contention was not documented in the pleadings.

(1961); Wignall v. Fletcher, 303 N.Y. 435, 103 N.E.2d 728 (1952).

Certainly the State may enact licensing and registration requirements to protect the public against reckless and financially irresponsible motorists. However, such requirements must meet basic constitutional standards. When a person meets the requirements set forth in licensing and registration laws, he may continue in the full enjoyment of those rights until it has been established that by reason of his abuse of those rights or other just cause, it is in the interest of public safety to revoke those rights. The Illinois Financial Responsibility Law effectively divests the right to drive or own automobiles from persons who cannot afford to deposit security covering claims asserted by other motorists, claims which may be inflated or fictitious, and additionally, who cannot purchase financial responsibility insurance. In short, these plaintiffs are denied a valuable right solely because of their economic status, without regard to any considerations of danger they may or may not pose to the public safety. If burdensome requirements are imposed only upon a select class of motorists, the method by which that class is selected must have a rational basis.

The plaintiffs concede that a state may compel the purchase of liability insurance as a precondition to issuance of driver's licenses or motor vehicle registrations. Such compulsory insurance applies to all motorists on a nondiscriminatory basis. *E. g.*, Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). Statutes requiring insurance as a precondition to licensing recognize the fact that every driver is capable of negligence, and they thereby protect the public against potential negligence by all motorists. See 30 Geo.Wash.L.Rev. 523, 525 (1962). Illinois has not enacted compulsory insurance legislation, however desirable it may be as a matter of social policy. Because Illinois could prohibit use and ownership of automobiles without proof of insurance coverage, it does not follow that these rights may be denied selectively without fair procedures. Cafeteria and Restaurant Workers Union, Local 473 AFL–CIO, et al. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L. Ed.2d 1377 (1959). Where the interest taken or destroyed is a valuable or essential one, reasonable notice and an opportunity to be heard prior to the taking must be afforded. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). To say that a prior administrative hearing to consider the question of fault or potential liability is unfeasible begs the issue. We are not dealing with an emergency situation where immediate revocations of driver's licenses or motor vehicle registrations are necessary to protect the public. Indeed, the public is far less protected against the reckless, insured motorist under this statutory scheme than it is against the uninsured, non-negligent motorist of limited financial means. A habitually reckless or negligent driver who is adequately insured or against whom an accident report has fortuitously never been filed, does not lose his license *unless he is convicted of three "moving violations" within a twelve-month period.* Ill.Rev.Stat.1969, Ch. 95½ § 6–206(a) (2). Viewed in this perspective, the fundamentally unfair procedures of the challenged provisions are of constitutional dimensions.

The plaintiffs also concede that a motorist adjudicated negligent, or found likely to be at fault by an administrative or state agency after notice and a hearing consistent with the principles of due process,[2] may be required to prove his

---

2. The administrative hearing contemplated by the majority, and nominally prescribed by the Financial Responsibility Law, would not consider questions of fault or potential liability. Such a hearing would be an empty formality, then, insofar as the constitutional objections asserted by these plaintiffs are concerned.

financial responsibility in order to retain his driver's license or vehicle registration. This is a reasonable classification of motorists who have demonstrated negligence in the ownership or operation of an automobile. *E. g.*, Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941). Similarly, the classification of persons failing to satisfy judgments arising from negligent use or ownership of an automobile has a rational basis. MacQuarrie v. McLaughlin, 294 F.Supp. 176 (D.Mass.1968), aff'd 394 U.S. 456, 89 S.Ct. 1224, 22 L.Ed.2d 417 (1969). By rendering considerations of fault or liability immaterial, the Illinois Financial Responsibility Law lacks the rational basis present in the *Reitz* and *MacQuarrie* decisions.

The Equal Protection Clause of the Fourteenth Amendment requires that a legislative classification bear a just and proper relation to the purpose for which it is made. Morey v. Doud, 354 U.S. 457, 465, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Smith v. Cahoon, 283 U.S. 553, 567, 51 S.Ct. 582, 75 L.Ed. 1264 (1930). The apparent legislative purpose of the Illinois Financial Responsibility Law is to assure the public that negligent drivers, *i. e.*, those likely to cause and be liable for future accidents, are financially responsible. The method employed for singling out those persons who must bear an economic burden not common to the driving public, and who may thus be effectively prohibited from owning or driving automobiles, must be rationally related to the protection of the public from irresponsible, negligent motorists. A dragnet method of selection is constitutionally impermissible. Classifications must be drawn narrowly enough so as

not to include large numbers of those for whom it is unreasonable. Morey v. Doud, supra; Smith v. Cahoon, supra; Smith v. Texas, 233 U.S. 630, 34 S.Ct. 681, 58 L.Ed. 1129 (1914).

In imposing its restrictive provisions, the statutory scheme here challenged makes no attempt to separate those at fault in causing accidents from those not at fault. The innocent and culpable are treated in the same manner. *Restricting the driving rights of the victim of an accident cannot be said to bear a proper or just relation to the protection of the public from irresponsible, negligent drivers.* Merely being a party to an accident, or having one's car involved in an accident, is not probative of fault or liability. Nor is a self-serving accident report filed by another interested party. The statutory scheme under consideration does not set forth any criteria for determination of those persons to which the statute applies other than involvement in an accident.[3] There is no apparent reason or necessity for requiring a driver or automobile owner who may have been the blameless victim of another's negligence to either show financial responsibility or forfeit his driving rights in order to protect the public. People v. Nothaus, 147 Colo. 210, 363 P. 2d 180, 183 (1961). The absence of considerations of fault or liability, or any other factors relating to the public safety, health, morals, or welfare, render the Illinois Financial Responsibility Law unconstitutional for failure to provide fundamental equal protection of the law.

I would therefore grant the declaratory and injunctive relief sought by these plaintiffs and the class they represent.

---

3. The only rational basis asserted by the defendants for the selection of persons adversely affected by this statutory scheme is that "poor people drive poor cars" and impliedly should be banned from use of their automobiles after involvement in one accident, whether they are the cause or the victim of the accident.