**John E. RAPER et al., Plaintiffs, Appellants,**

**v.**

**David J. LUCEY et al., Defendants, Appellees.**

**No. 73–1224.**

United States Court of Appeals, First Circuit.

Heard Oct. 2, 1973.

Decided Dec. 11, 1973.

Stephen J. Ransford, Holyoke, Mass., for plaintiffs, appellants.

Christopher H. Worthington, Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and MOORE,* Senior Circuit Judge.

---

* Of the Second Circuit sitting by designation.

1. On appeal, defendants for the first time assert that since Raper had a substantial criminal record, and at the time of this 1972 application was on parole in Vermont and on probation in Massachusetts for separate of-

McENTEE, Circuit Judge.

This action brought under 42 U.S.C. § 1983 (1970) alleges that certain deficiencies in the current Massachusetts administrative procedures governing motor vehicle license applications are violative of procedural due process.

Briefly stated, the pertinent facts are as follows. In 1962, at the age of 16, plaintiff Raper first applied to the Registrar of Motor Vehicles in Massachusetts for a license to operate motor vehicles. His application was denied but he was not told why. Since that time Raper periodically renewed his application for a license. Each time it was denied but the Registrar never gave him any reasons. Following his most recent application, which was made in early 1972, Raper received two letters from the Registrar, both of which indicated that his application was again being denied because "it did not appear advisable" to issue him a license. However, no specific reasons were stated in either letter.[1] After the 1972 denial, Raper took his case to the Board of Appeal on Motor Vehicle Liability Policies and Bonds (the Board of Appeal) and in May of that year appeared with counsel before the Board. This meeting was held in Boston which is the only place in the Commonwealth where the Board meets. At that time the Board informed plaintiff that it would not exercise its jurisdiction over the appeal until permission letters, so-called, were obtained from his probation and parole officers. These letters, which the record shows contained recommendations, were submitted to the Registrar and the application was referred back to his office for further consideration. No action having been taken, by either the Registrar or the Board during the next several months, plaintiff commenced the instant

fenses, the reason for the most recent denial of his application was his criminal background. Although this may have motivated the Registrar to conclude that issuance of a license did not "appear advisable," the record does not reveal any evidence of this.

suit. On motion of the defendants,[2] the district court dismissed the complaint for failure to state a claim upon which relief can be granted.[3]

On this appeal plaintiff contends that the due process clause of the fourteenth amendment imposes on Massachusetts the following procedural constraints with regard to the handling of license applications: (1) to provide a statement of reasons when license applications are rejected; (2) to publish whatever policies and rules the Board of Appeal observes in conducting hearings on rejected applications; and (3) to hold Board of Appeal hearings at various locations in Massachusetts, and not merely in Boston.

In order to evaluate whether plaintiff's contentions state a cause of action under § 1983, we must focus our attention upon two separate and distinct questions. First, does the claim involve a federally protected constitutional right? Secondly, has the plaintiff alleged facts which indicate that defendants have infringed upon that right?

■■ The district court ruled that since the issuance of an operator's license is discretionary with the state, a constitutionally guaranteed "right" was not involved. By so holding, the court misconceived the issue. In his complaint, plaintiff did not argue that he had a right to an operator's license, and we may take it as settled that such a right, federal or state, does not exist. *See, e. g.,* Perez v. Tynan, 307 F.Supp. 1235, 1238 (D.C.Conn.1969); United States v. Carter, 275 F.Supp. 769, 770 (D.C. D.C.1967). However, the plaintiff did assert that he had a constitutionally protected right to procedural due process in the state application procedures whereby a determination of whether to issue such a license will be made. With

---

2. The named defendants were the Registrar of Motor Vehicles, the Attorney General and the Commissioner of Insurance, or their nominees, as members of the Board of Appeal. In addition, the Registrar was named in his official capacity.

3. Defendants urge alternatively, that the complaint should have been dismissed for plaintiff's failure to exhaust available state administrative remedies. In the first place, we think the available administrative procedures would not have responded to plaintiff's demand for procedural due process. Moreover, a series of recent Supreme Court decisions, Carter v. Stanton, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1971) (per curiam); Wilwording v. Swenson, 404 U.S. 249, 92 S. Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam); Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968) (per curiam); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967) (per curiam); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), have led many lower federal courts to conclude that such a requirement is no longer necessary in § 1983 cases. *See, e. g.,* Beale v. Blount, 461 F.2d 1133, 1139 n. 11 (5th Cir. 1972); Padilla v. Ackerman, 460 F.2d 477, 479 (9th Cir. 1972); Gilliam v. City of Omaha, 459 F.2d 63, 63–64 (8th Cir. 1972) (per curiam); Jones v. Metzger, 456 F.2d 854, 856 (6th Cir. 1972); Hayes v. Secretary of Dept. of Public Safety, 455 F.2d 798, 800 (4th Cir. 1972); LeVier v. Woodson, 443 F.2d 360, 361 (10th Cir. 1971); Musselman v. Spies, 343 F.Supp. 528, 533 (M.D.Pa.1972); Cook v. Edwards, 341 F.Supp. 307, 310 (D.N.H.1972).

We concede that several of our own recent opinions in the area of school administration, read broadly, would seem out of step with these authorities. Beattie v. Roberts, 436 F. 2d 747, 748–749 (1st Cir. 1971); Drown v. Portsmouth School Dist., 435 F.2d 1182, 1186 n. 10 (1st Cir. 1970), cert. denied, 402 U.S. 972, 91 S.Ct. 1659, 29 L.Ed.2d 137 (1971); Dunham v. Crosby, 435 F.2d 1177, 1180 n. 2 (1st Cir. 1970). To the extent that they indicate a general or automatic requirement of administrative exhaustion in § 1983 cases, we note our disapproval and signal our acceptance of the earlier cited line of cases. But we adhere to our view of the necessity for ripeness to the extent that there must be at least some definitive administrative or institutional determination before a § 1983 action may arise. We subscribe to the view expressed in Stevenson v. Board of Education, 426 F.2d 1154, 1157 (5th Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970), that we should not "intervene in school personnel and management problems without requiring such prior reference to local institutional authority as may be necessary to assure that the action complained of is final within the institution in the sense that it is ripe for adjudication."

this assertion, we are in complete agreement.

 Among other things, the due process clause of the fourteenth amendment protects individuals from unreasonable and unjustifiable state deprivations of personal liberty. Board of Regents v. Roth, 408 U.S. 564, 571–572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). Although an exact description of what constitutes protectible "liberty" has never been fully articulated, it has long been held that such liberty encompasses much more than the simple right to be free from unwarranted bodily restraint. Board of Regents v. Roth, *supra*; West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Smith v. Texas, 233 U.S. 630, 34 S.Ct. 681, 58 L. Ed. 1129 (1914); Allgeyer v. Louisiana, 165 U.S. 589, 17 S.Ct. 427, 41 L.Ed. 832 (1897). In Wall v. King, 206 F.2d 878 (1st Cir.), cert. denied, 346 U.S. 915, 74 S.Ct. 275, 98 L.Ed. 411 (1953), this court was faced with the contention that the personal liberty provision of the due process clause should be extended to cover the use of a motor vehicle. After careful analysis, the court accepted this proposition, remarking:

> "We have no doubt that the freedom to make use of one's own property, here a motor vehicle, as a means of getting about from place to place, whether in pursuit of business or pleasure, is a 'liberty' which under the Fourteenth Amendment cannot be denied or curtailed by a state without due process of law." 206 F.2d at 882.

*See also* Reese v. Kassab, 334 F.Supp. 744 (W.D.Pa.1971); Perez v. Tynan, *supra*; *cf.* Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Brockway v. Tofany, 319 F.Supp. 811 (S.D.N.Y.1970). Although *Wall* involved the application of procedural due process to license *suspension* proceedings,

we can see no legitimate basis to decline to apply its rationale to the instant challenge directed against comparable license *application* proceedings. *Cf.* Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964) (procedural due process applicable to application for retail liquor license). The principles are identical. If the use of a motor vehicle may properly be viewed as a "liberty" protectible by due process, it makes no difference whether the threatened state deprivation will result from the loss of an operator's license, or from the failure to have one issued. We thus conclude that fourteenth amendment due process will attach to state procedures regulating the application and issuance of a motor vehicle operator's license. Consequently, the claims asserted in the complaint must be said to involve a federally protected right.

 Even though federally protected rights are at issue, plaintiff must sufficiently allege facts to indicate that a deprivation of those rights by defendants has occurred. If not, the complaint would fail to state a claim under § 1983. *See* Wall v. King, *supra*. Normally we would begin any analysis of plaintiff's asserted procedural due process deprivations by first identifying the particular opposing private and governmental interests involved, and then weighing the validity and relative importance of these interests against the backdrop of our constitutional scheme. Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). However, in this case, at least with respect to plaintiff's first two contentions, our task is simplified by the complete absence of any legitimate governmental interest.

 Initially, plaintiff has contended that the failure of the Registrar to indicate reasons for the denial of his license application constitutes a

deprivation of due process.[4] Raper's strong interest in adequate notice of the specific reasons behind the Registrar's decision is clear. It is elementary that due process within administrative procedures requires the opportunity to be heard "at a meaningful time and in a meaningful manner." Goldberg v. Kelly, *supra*, 397 U.S. at 267, 90 S.Ct. at 1020. Although plaintiff, by exercising his statutory right to appeal an adverse decision of the Registrar, would have the opportunity to be heard by the Board, we are at a loss to comprehend how such a hearing could be said to be "meaningful" if prior thereto the plaintiff was unaware of the grounds for the Registrar's decision. Maintaining even an adequate presentation before the Board under these circumstances would seem a Herculean accomplishment. Without a statement of reasons, an applicant would not know what, or for that matter whether, to appeal. Reasons for governmental action affecting important individual rights must be timely proffered in order to satisfy due process. *See* Board of Regents v. Roth, *supra* (termination from state employment); Goldberg v. Kelly, *supra* (termination of welfare benefits); Misurelli v. City of Racine, 346 F.Supp. 43, 49 (E.D.Wis.1972) (denial of application for renewal of liquor license); Clutchette v. Procunier, 328 F.Supp. 767, 782 (N.D.Cal.1971) (prison discipline). The government has not advanced any appropriate interest that would be served by its refusal to detail reasons. The function of the Board of Appeal is not to rubber-stamp the Registrar, but to provide a sufficient forum for the correction of administrative mistakes. It would therefore be in the state's interest to note the reasons for denial, so that the Board hearing may more likely achieve its intended purpose. Moreover, by compelling the Registrar to indicate a specific basis for his action, we minimize the possibility of arbitrary or unreasoned administrative judgment. A statement of reasons may thus serve as an important safeguard against unwarranted abuse of the Registrar's statutory discretion in approving or disapproving license applications.[5]

For many of the same reasons, plaintiff's second contention, regarding the failure of the Board to publish *existing* policies and regulations,[6] would similarly seem to constitute an infringement of due process rights. In order that the Board hearing may legitimately be said to be held "in a meaningful manner," Goldberg v. Kelly, *supra*, it appears necessary to inform applicants of any existing procedural requirements that must be complied with,[7] as well as those current substantive criteria which will govern Board decisions. Additionally, there do not appear to be adequate countervailing governmental interests in nonpublication, and any financial or

4. We note that plaintiff does not allege that due process requires a full hearing before the Registrar prior to denial of a license application. To require such a hearing would place an inordinate burden on the Registrar's limited facilities, and would seem unnecessary in view of the statutory mechanism for immediate appellate hearing before the Board. Nor does plaintiff seek to challenge the adequacy of the statutory standards whereby the Registrar is authorized to deny a license application merely if the applicant is not deemed a "proper person." Mass.Gen.Laws Ann. ch. 90, § 8 (1969). *Cf.* Jodbor Cinema Ltd. v. Sedita, 309 F.Supp. 868 (W.D.N.Y.1970).

5. It also appears that it would impose no real administrative burden on the Registrar to include a statement of reasons in his notice of denial. Where the government can achieve a result equally well by according due process as by denying it, the former course of action must be followed. Palmigiano v. Baxter, 487 F.2d 1280 at 1287–1288 (1st Cir., 1973).

6. We are careful to note that plaintiff does not seek to compel the Board of Appeal, as a matter of due process, to promulgate any particular appellate standards or procedures. A much closer question would be presented by such a contention. Plaintiff merely urges that the Board's failure to publish those policies which have already been adopted constitutes a denial of due process.

7. For example, Raper was completely unaware that Board policy required the submission of certain permission letters before jurisdiction over the appeal would be assumed. Failure to be adequately apprised of this requirement caused him needless travel and expense.

other burden that publication would impose upon the Board seems minimal.

Plaintiff's final claim appears to be that his due process rights were infringed by the failure of the Board to hold hearings throughout Massachusetts. He cites no direct support for this novel proposition, nor has this court found any. In our opinion the Board hearings presently provided in Boston are adequate and entirely consistent with procedural due process. As to this contention, the complaint fails to state a cause of action.

The judgment of the district court is reversed, and the case is remanded for proceedings not inconsistent with this opinion.