Nicholas A. PALMIGIANO,
Plaintiff, Appellant,

v.

James W. MULLEN, Warden, et al.,
Defendants, Appellees.

No. 73–1331.

United States Court of Appeals,
First Circuit.

Submitted Dec. 3, 1973.

Decided Feb. 19, 1974.

As Amended Feb. 27, 1974.

Nicholas A. Palmigiano, on brief pro se.

W. Slater Allen, Jr., Asst. Atty. Gen., and Richard J. Israel, Atty. Gen., on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff Nicholas Palmigiano, serving a life sentence for murder, has sued correctional personnel comprising the prison Classification Board at Rhode Island's Adult Correctional Institution. Citing 42 U.S.C. § 1983 and companion provisions, he asks for damages from the individual defendants.

Palmigiano's grievance devolves from the Classification Board's unwillingness to alter his classification as a maximum security prisoner, a classification resulting in more severe restrictions than are imposed upon inmates in other categories. In his complaint he intimated that he was so classified only because he headed several prisoners' rights organizations, and alleged that the classification was arbitrary and without reason.

Defendants moved for summary judgment, filing an affidavit that Palmigiano had applied for reclassification on several different dates, that on almost every occasion he had a hearing before the Board at which he was assisted by a lay advocate, that it had been the Board's consistent conclusion that his presence in maximum security was warranted by need for prison security and his further rehabilitation, and that he had not appealed to the Rhode Island Superior Court.

Palmigiano filed an unsworn "answer" to the affidavit,[1] admitting among other things that he had not appealed but denying that he had been assisted by the particular named lay advocate. The district court thereafter granted summary judgment on the ground of Palmigiano's failure to appeal to the Rhode Island Superior Court.[2]

The district court erred in granting summary judgment on that ground,[3] and since it mentioned no other, we are constrained to remand. The Supreme Court reiterated last term in Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), that a prisoner need not exhaust state judi-

1. Palmigiano also filed, among other papers, two affidavits, one from a fellow prisoner and one from a guard. Both recited the affiant's belief that Palmigiano was a model prisoner.

2. Anyone aggrieved by an adverse decision of an "agency", as defined in G.L.R.I. § 42–35–1(a), may appeal the decision to the Superior Court and, if still dissatisfied, to the Supreme Court. G.L.R.I. §§ 42–35–15, 42–35–16. The Classification Board is established by Rhode Island statute, G.L.R.I. § 13–3–2, and the various classifications, the restrictions imposed under each, and the procedures for classifying are set forth at length in state regulations now known as the "Morris rules" which were adopted in settlement of civil rights litigation in the district court. Morris v. Travisono, 310 F.Supp. 857 (D.R.I.1970).

3. We interpret its ruling as requiring prior "exhaustion" of state judicial remedies. If what the court meant was that Palmigiano had stated no federal claim and hence was left with only a state remedy, it would presumably have said so.

cial remedies before he may bring a § 1983 action. *See* Raper v. Lucey, 488 F.2d 748, 751 n. 3 (1st Cir. 1973).[4] The ground is thus foreclosed. Were we facing the question *de novo*, much might be said in favor of requiring Palmigiano to exhaust state judicial remedies, as prisoner classification is governed in Rhode Island by constitutionally adequate regulations that were, indeed, recently developed with the assistance of, and approved by, the federal court. Morris v. Travisono, 310 F.Supp. 857, 870 (D.R.I.1970). The enforcement of these regulations, which the Rhode Island courts are well equipped to do, would seem at one and the same time to assure Palmigiano of his constitutional rights.

Following remand, the district court will have pending before it for further consideration all other grounds for summary judgment. The district court rather than ourselves is the appropriate body to deal first with such issues, especially in view of the possible need for supplementation of the record. The following observations may assist:

 1. It is far from clear, though we do not foreclose the possibility, that Palmigiano has demonstrated or can demonstrate the existence of a federal claim. Not every classification error gives rise to an infringement of a constitutionally-protected right. Given the history and constitutional adequacy of Rhode Island's classification standards and rules, it will be the unusual case, involving marked departure by state officials therefrom, which might give rise to a supportable claim of constitutional deprivation. To avoid summary judgment Palmigiano must show with convincing particularity some likelihood either that the defendants disregarded *Morris* procedures or else classified him a maximum security prisoner for reasons utterly beyond the scope of any legitimate authority granted to

them. To the extent he complains simply that the decision of the Classification Board reflects an erroneous judgment, his only remedy is that provided by state law and procedures. There is no federally-protected right to a particular classification nor even to an error-free decision by the state authorities.

"The Constitution does not assure uniformity of decisions or immunity from merely erroneous action, whether by the courts or the executive agencies of a state." Snowden v. Hughes, 321 U.S. 1, 15, 624 S.Ct. 397, 404, 88 L.Ed. 497 (1944) (Frankfurter, J., concurring).

 2. In a damages action such as this plaintiff must also show that he is prepared to prove the defendants' bad faith or at least such a degree of neglect or malice or—in equal treatment cases —deliberate discrimination as to deprive defendants of official immunity for merely erroneous action. *See* Pierson v. Ray, 386 U.S. 547, 555–558, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Francis v. Lyman, 216 F.2d 583 (1st Cir. 1954); Kelley v. Dunne, 344 F.2d 129 (1st Cir. 1965); Jobson v. Henne, 355 F.2d 129 (2d Cir. 1966); Gaffney v. Silk, 488 F. 2d 1248 (1st Cir. 1973); 3 K. C. Davis, Administrative Law Treatise § 26.06 (1958; Supp.1970). An inmate may not force state officials to trial on a damages claim merely by catchall allegations of unfairness and mistake. We do not suggest that possibly meritorious claims should be defeated because of mere pleading defects. But we do require even *pro se* plaintiffs to establish, when called upon to do so at a preliminary stage, that their claim has sufficient *prima facie* merit to warrant the bother and expense of a trial. Section 1983, like habeas corpus, is not "a general form of relief for those who seek to explore their case in search of its existence." Aubut v. Maine, 431 F.2d 688, 689 (1st Cir. 1970).

4. An aggrieved person must, however, pursue the administrative process until the case is "ripe" for judicial determination, *see* Raper v. Lucey, 488 F.2d 748, 751. Palmigiano's

case is ripe in the *Raper* sense because he is experiencing the confinement of which he complains and the Classification Board has completed passing on his applications.

3. Finally an inmate in an institution governed by the *Morris* rules seems less likely to prevail in a § 1983 damages action for purported misclassification without having made a reasonable attempt to secure review of his classification by the state director of corrections. It is unclear whether plaintiff has done so. The state director rather than the Classification Board may review and has ultimate legal responsibility for the classification. G.L.R.I. § 13–3–3; Morris v. Travisono, *supra,* 310 F. Supp. at 871. While the Classification Board's own action, when complete, is, as we have said, "ripe" in the *Raper* sense, and while we do not say that failure to seek the director's review would bar suit in this case, an inmate suing for damages should recognize that a failure to mitigate damages by making a reasonable attempt to place his grievance before the director might seriously affect the ultimate outcome.[5]

Reversed and remanded.

5. We leave open whether in certain § 1983 prisoner's actions, particularly those for equitable relief, an inmate may not be required to exhaust readily available and adequate administrative procedures specially designed for the very grievance in issue. Gibson v. Berryhill, 411 U.S. 564, 574–575 n. 14, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); Blanton v. State University, 489 F.2d 377 at 382–384 (2d Cir. 1973).