PROVIDENCE TEACHERS UNION
et al.

v.

Edward T. DONILON et al.

Civ. A. No. 78–0185.

United States District Court,
D. Rhode Island.

May 30, 1980.

Richard A. Skolnik, Providence, R. I., for plaintiffs.

Vincent J. Piccirilli, Providence, R. I., for defendants.

## OPINION

FRANCIS J. BOYLE, District Judge.

The Providence Teachers' Union, A.F.T., Local 958, [hereinafter "Union"] in its representative capacity [1] and two of its members, Paul Williams and Karin O'Connell DiCenzo,[2] bring this action for declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983 for deprivation of rights guaranteed by the Due Process Clause of the Fourteenth Amendment.

Mr. Williams and Mrs. DiCenzo received letters dated February 13, 1978, from Jerome Jones, Superintendent of Schools, notifying them that "a resolution for the non-renewal of . . . [each teacher's] teaching contract will be presented to the Providence School Committee at its meeting of February 16, 1978"; that "[p]assage of that resolution will terminate . . . [their] employment as . . . teacher[s] as of the last day of the 1977–78 school year"; and that "[t]he reason for the action of the Committee is the result of a program reorganization." They were invited to attend a meeting to be held on February 15 and 16, 1978. Due to the weather conditions caused by the Blizzard of 1978, the meeting was not held until February 27, 1978. At that meeting, Plaintiffs' counsel, who was representing a total of fifty-one teachers, requested an opportunity to be heard. He was allowed to speak for three minutes. Counsel was permitted only to make a statement and was not permitted to present witnesses, or to examine members of the School Committee concerning the notice which merely stated that non-renewal was in connection with a "program reorganization." Resolution No. 336, which provided in part for the non-renewal of the teaching contracts of Mrs. DiCenzo and Mr. Williams, was passed by the Providence School Committee on February 27, 1978.[3] Plaintiffs have requested but have not received meaningful statements of the cause of non-renewal.

Plaintiffs filed this action on April 14, 1978. On the same day, other members of the Union brought an action in the Superior Court of Providence seeking to enjoin Defendants from effectuating any resolutions adopted at the February 27, 1978, meeting of the Providence School Committee, alleging that the meeting violated the Open Meeting Law. It was averred that the room was overcrowded, that counsel was not able to find a place within the meeting room and that counsel had to be called in to speak. A Preliminary Injunction was denied by Associate Superior Court Justice John Bourcier on July 6, 1978. Because the question of compliance with the Open Meeting Law is presently pending before the state court and requires an application of state law, this Court need not decide the issue.

The adoption by Defendants of Resolution No. 336 was appealed to the Commissioner of Education on January 18, 1979. A hearing before the Commissioner, has been deferred pending receipt of a transcript of Judge Bourcier's decision. The decision of the Commissioner is still pending.

Plaintiffs in this action contend that the decision of the School Committee was "arbitrary and capricious" and that the manner in which the meeting was held deprived them of a meaningful pre-notification hearing as required by the Due Process Clause of the Fourteenth Amendment. Additionally, Plaintiffs argue that the failure of the School Committee to provide a statement of reasons for the non-renewal as requested pursuant to R.I. Gen. Laws § 16–13–4 was a

---

1. The parties appear to treat this action as one brought by the Union and the individual teachers. The Court will address only the claims of the individual teachers, in the absence of a demonstration by the Union of any conceivable constitutional interest.

2. All other teachers named in the Complaint have been reinstated and are no longer parties to this action.

3. The notice of non-renewal must be given the teacher not later than March 1. R.I. Gen. Laws § 16–13–2.

denial of due process. The issues therefore are the adequacy of process afforded to Mr. Williams and Mrs. DiCenzo both before and after notice to them of the non-renewal of their teacher contracts. Because Plaintiffs received a limited hearing before the School Committee, and because Plaintiffs made demand for a meaningful statement of cause which they have yet to receive, these issues are ripe for adjudication. *See Raper v. Lucey,* 488 F.2d 748 (1st Cir. 1973).

■ It is settled that tenured teachers, who can be dismissed only for cause, have a property right protected by the Due Process requirements of the Fourteenth Amendment. *See Board of Regents v. Roth,* 408 U.S. 564, 576–578, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601–602, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972). R.I. Gen. Laws § 16–13–1 *et seq.,* known as the Teacher Tenure Act, provides in Section 16–13–3:

> Probationary period—Tenure after probation.—Three (3) successive annual contracts shall be considered evidence of satisfactory teaching and shall constitute a probationary period. Teachers who have given satisfactory service for three (3) years prior to April 24, 1946, and [thereafter] those who shall complete the probationary period, shall be considered in continuing service. No such teacher shall be dismissed except for good and just cause  . . .

It has been stipulated by the parties that Karin O'Connell DiCenzo taught continuously as a full-time teacher in Providence since September 1, 1974, pursuant to successive annual contracts; and that Paul Williams taught continuously as a full-time teacher in Providence since January 4, 1971, pursuant to successive annual contracts. It must be concluded that they were tenured teachers within the meaning of the Teacher Tenure Act.

There is no doubt that Mrs. DiCenzo and Mr. Williams were provided a limited opportunity to be heard prior to the adoption by the School Committee of Resolution No. 336, but it is contended that this opportunity was not meaningful in that the Commit-

tee did not provide any data or specific information supporting or otherwise relating to the reasons for non-renewal as set forth in Resolution No. 336. Mr. Williams and Mrs. DiCenzo were simply informed that the reason for their non-renewal was "program reorganization." In arguing that the three minute hearing held prior to the notification of non-renewal was inadequate, Plaintiffs rely heavily on *Parkhurst v. D'Amico,* No. 75–0215 (D.R.I. Feb. 5, 1976). *Parkhurst,* however, is clearly distinguishable in that it dealt with suspension of teachers pursuant to R.I. Gen. Laws § 16–13–6. The section provides as follows:

> Suspension because of decrease in school population—Seniority—Reinstatement.—A school board may, by reason of a substantial decrease of pupil population, within its school system, suspend teachers in such numbers as are necessitated by the decrease in pupil population; provided, however, that such suspension of teachers shall be in the inverse order of their employment unless it is necessary to retain certain teachers of technical subjects whose places cannot be filled by teachers of earlier appointment; and, provided, further, that such teachers as are suspended, shall be reinstated in the inverse order of their suspension. No new appointments shall be made while there are available teachers so suspended.

*Parkhurst* did not involve the dismissal or non-renewal of teachers. The School Committee in the event of non-renewal, as distinguished from suspension because of decrease of school population, is required to follow the procedure set forth in Sections 2 through 4 of Title 16, Chapter 13 of the Rhode Island General Laws, which provide that notice of non-renewal must be given by a certain date and which permit the teacher to then demand within fifteen days of notice a statement of cause and a hearing. Section 16–13–2 provides that teacher contracts are continuous unless the teacher is notified in writing on or before March 1 that the teacher's contract will not be renewed for the following year. Section 16–13–3 provides for teacher tenure and limits

the basis of dismissal to "good and just cause." Section 16–13–4 provides that in the event of dismissal for cause the teacher shall be given a written statement of cause at least one month prior to the close of the school year. Section 16–13–2 permits the teacher to request a written statement of cause for non-renewal. In both instances, the teacher continues in employment to the end of the then current school year, and it is incumbent on the teacher to elect to seek a hearing. It is of the utmost significance that *Parkhurst* dealt with suspensions of teachers under Section 16–13–6. That section does not prescribe a final date upon which the school committee must act. And, more significantly, there is no statutory procedure for notice, a statement of reasons or indeed even a hearing. Suspended teachers are provided no process by state law.

Also, the court in *Parkhurst* relied heavily upon *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). It did not have the benefit of the Supreme Court's Opinion in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), decided nineteen days after the Opinion in *Parkhurst.* As demonstrated hereafter, *Mathews v. Eldridge* effected a substantial limitation upon the application of *Goldberg v. Kelly.*

Additionally, Section 16–13–6 provides a very limited remedy, that is, suspension due to a substantial decrease in pupil population, a fact which the court found had not been proven.

*Parkhurst*, therefore, is not authority for the proposition, which the Plaintiffs in this action urge, that non-renewal for "program reorganization" requires that there be either a "full" or "mini" scale hearing on the notice before the notice of non-renewal is sent to the teacher.

■ In numerous cases where the requirements of due process have been examined, evidentiary hearings have not been required prior to notification of dismissal or non-renewal. *See Mathews v. Eldridge, supra; Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Board of*

*Regents v. Roth, supra; Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The exception to this rule is *Goldberg v. Kelly*, where a full evidentiary hearing was required prior to the termination of a recipient's welfare benefits. However, *Goldberg v. Kelly*, which involved the termination of welfare benefits effectively reducing the recipient to the status of a mendicant, has been held to be limited to its facts. *Mathews v. Eldridge, supra*, 424 U.S. at 333, 96 S.Ct. at 902. In *Mathews v. Eldridge*, the Court distinguished *Goldberg v. Kelly*, and held that a pretermination hearing was not required by due process because, although a disabled worker's need for disability payments is likely to be significant, a disabled worker's need upon termination of benefits is likely to be less than that of a welfare recipient. *Mathews v. Eldridge, supra*, 424 U.S. at 342, 96 S.Ct. at 906. Likewise, the need of a non-renewed teacher is likely to be less than that of a welfare recipient. Further, a non-renewed teacher has a statutory right to notice, a statement of cause and a hearing which accrues a substantial period of time before the renewed term of employment is to begin.

■ In *Mathews v. Eldridge, supra*, at 334–335, 96 S.Ct. at 903, the Court spelled out the factors to be considered in determining the requirements of due process:

More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

An application of these factors to the facts of this case demonstrates that due process does not require that tenured teachers be provided a hearing prior to notification of non-renewal of their contracts.

■ The private interest of tenured teachers to continued employment would be significantly affected by the actual termination of employment at the end of a given school year, and there is no doubt that a hearing should be afforded them. *Wolff v. McDonnell*, 418 U.S. 539, 557–558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). However, the private interest of the teachers can hardly be said to be affected by a notice given in advance of a new term of employment to begin in the future. Notice of non-renewal must be accomplished according to Rhode Island law by March 1, and the non-renewed teacher would not cease being employed until the end of the then current school year.

Likewise, the risk of an erroneous deprivation is minimal, since the teacher is entitled to demand a statement of cause and a hearing and there would be no effective deprivation until the beginning of the next school year.

Thirdly, the fiscal and administrative burdens which would be imposed on the School Committee by a requirement of an evidentiary hearing for every non-renewed teacher prior to notification would be monumental. All members of the Committee must attend the hearing. *Jacob v. Board of Regents*, 117 R.I. 164, 365 A.2d 430 (1976). At the same time, the School Committee should be applying itself to educational issues which relate to matters of importance other than teacher contracts.

The imposition of requirements for prior notice of proposed notice of non-renewal, a prior statement of reasons, and a prior hearing in this instance could have resulted in fifty-one separate hearings and could effectively thwart the School Committee from meeting the notice deadline imposed by the state law, as well as effectively bringing its administrative duties to a standstill. Plaintiffs are entitled to due process—not undue process.

■ Plaintiffs' claim to notice and a hearing before notice is given of non-renewal fails the trilogy of factors established in *Mathews v. Eldridge* as the foundation of a due process claim. For these reasons, it cannot be said that the Plaintiffs were constitutionally entitled to a pre-notice hearing since the process afforded by state law is adequate to provide that process which is due.

■ Additionally, Plaintiffs claim that the inadequacy of the process furnished to them subsequent to notice of termination was a denial of due process. State law requires that teachers be promptly given reasons for non-renewal and an opportunity to refute the reasons. It is fundamental that this opportunity to be heard be provided "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

■ It is not contended that the state procedure set forth in the Teacher Tenure Act is inadequate,[4] but rather that this procedure was not followed in this instance. Mr. Williams and Mrs. DiCenzo have yet to be provided with a meaningful statement of cause why their contracts were not renewed. A phrase—"program reorganization"—was used, but no factual information was provided. Non-renewed teachers had no information from which to glean whether, or to demonstrate that, the bases for the decision were erroneous. The reasons given are inadequate as a post-notification statement of cause required by R.I. Gen. Laws § 16–13–4.

■ Because Mr. Williams and Mrs. DiCenzo have yet to be provided with meaningful statements of cause for non-renewal and a hearing concerning their non-renewal, the Court will direct that Mr. Williams and Mrs. DiCenzo be given meaningful statements of cause for non-renewal within

---

4. *See Guarino v. Dep't. of Social Welfare* ——, R.I. ——, 410 A.2d 425 (1980), where a similar statutory scheme was upheld by the Supreme Court of Rhode Island.

fifteen days. Plaintiffs will be given hearings if demanded which are to be held within ninety days of the date the demand is filed with the School Committee.

Plaintiffs may prepare and present a form of Order.