**Robert S. NICHOLSON, Plaintiff,**

v.

**John J. MORAN; Donald O. Ellerthorpe; Ronald Brule; and Michael Solitro, Defendants.**

**Civ. A. No. 89–0231–BO.**

United States District Court,
D. Rhode Island.

Nov. 8, 1993.

*Memorandum of Decision*

BOUDEWYNS, United States Magistrate Judge.

Plaintiff, Robert S. Nicholson ("Nicholson"), an inmate at the Adult Correctional Institute ("ACI") in Cranston, Rhode Island, has brought an action pursuant to 42 U.S.C. § 1983, seeking damages and injunctive relief for alleged deprivation of First Amendment rights, Fourteenth Amendment rights, and rights protected by the "Morris Rules." [1] The parties have stipulated to all relevant facts and submitted exhibits for consideration. This matter is now ready for disposition. [2]

As discussed below, I find the following: first, neither defendant Brule's policy of charging prisoners for providing "false information," nor the ACI's policy of punishing prisoners found guilty of this charge, *facially* violates the First Amendment to the United States Constitution; second, the ACI disciplinary board ("disciplinary board") denied plaintiff his liberty interest in remaining with the general inmate population without due process of law in violation of the Fourteenth Amendment when it punished him without "substantial evidence" in the record; [3] third, there is no constitutional obligation on the part of the ACI to promulgate regulations concerning the free exercise of First Amendment rights.

*Facts*

Nicholson was an inmate incarcerated in the ACI's medium security facility from August 1, 1988 through and including March 1, 1989. On or about August 12, 1988, Nicholson alleged that he had been assaulted by two correctional officers employed by the Department of Corrections ("DOC") at the medium security facility. He made this allegation at a meeting attended by Ronald Brule ("Brule"), Deputy Warden of the ACI

Mark W. Freel, and Christine M. Curley, Providence, RI (American Civil Liberties Union, Rhode Island Affiliate, c/o Edwards & Angell, was on brief), for plaintiff.

Stephen M. Robinson, Deputy Chief of Legal Services, Rhode Island Dept. of Corrections, Providence, RI, for defendants.

**1.** *See Morris v. Travisono,* 499 F.Supp 149 (D.R.I. 1980). For a history of the Morris Rules, see *Cugini v. Ventetuolo,* 781 F.Supp. 107, 108–12 (D.R.I.), *aff'd* 966 F.2d 1440 (1st Cir.1992).

**2.** The parties have consented to the trial of this matter before a Magistrate Judge pursuant to 28 U.S.C. § 636(c). *See also* Federal Rule of Civil Procedure ("FRCP") 73.

**3.** This finding makes it unnecessary to reach the issue of whether, in the factual context of this case, the ACI disciplinary board "retaliated" against plaintiff in violation of First Amendment rights. *See infra* footnote 14 and accompanying text.

medium security facility, and members of the Rhode Island State Police. An investigation of the assault allegation was subsequently conducted by the Office of the United States Attorney for the District of Rhode Island and the U.S. Department of Justice, Civil Rights Division.

In January, 1989, Nicholson and various DOC defendants, including Brule, received correspondence from the U.S. Department of Justice stating that the investigation of Nicholson's assault allegation had been closed. The correspondence stated that the federal authorities had determined that the alleged actions of the DOC correctional officers "di[d] not constitute a prosecutable violation of the federal criminal rights statutes ... based upon the information currently available to us." The correspondence also stated that federal officials had found "insufficient evidence" upon which to pursue prosecution under certain identified federal criminal statutes.

Following receipt of the correspondence, Brule initiated a disciplinary charge against Nicholson for providing "false information" in regard to the subject assault allegation. This charge was initiated by Brule pursuant to an unwritten policy and practice that he initiated within this facility in early 1987, approximately six months prior to Nicholson's allegation of assault. Under the subject policy or practice, Brule, as Deputy Warden of the ACI medium security facility in which Nicholson was incarcerated, would *automatically* initiate a charge of providing false information against any inmate who alleged an assault by correctional officers whenever such allegation did not ultimately result in either the initiation of criminal charges against such correctional officers, or the provision of sufficient conclusive evidence by the inmate to substantiate the assault allegation.[4] Nicholson contends, *inter alia,* that this charging policy violates his Constitutional rights and the rights of other prisoners.

A hearing on the disciplinary charge was held before the disciplinary board on or about January 19, 1989. Evidence presented at the hearing included only the contents of Nicholson's allegation and the correspondence from federal officials concerning their investigation of the allegation. The correctional officers who Nicholson alleged assaulted him neither testified nor presented affidavits to the disciplinary board. After a hearing, the disciplinary board found Nicholson guilty of providing false information.

Plaintiff subsequently appealed the disciplinary board's decision to the defendant Donald Ellerthorpe, a hearing officer. That appeal was denied. As a result of these decisions, Nicholson was sentenced to serve thirty days in punitive segregation commencing on February 1, 1989, and he suffered a loss of thirty days of good-time credits. The subject sentence was served in full.

In this action based on 42 U.S.C. § 1983, Nicholson alleges that he has been deprived of his constitutional rights and his rights as protected by the Morris Rules, and he seeks injunctive and compensatory relief. First, Nicholson argues he has been denied his First Amendment right to seek redress of grievances because of Brule's "retaliatory" policy of charging inmates for providing false information, which results in disciplinary board punishment; second, Nicholson argues that he has been denied a liberty interest without due process because the disciplinary board's decision was not based upon "substantial evidence" in the record, as required by the Morris Rules; third, Nicholson argues that the DOC has failed to meet its statutory obligations to promulgate rules and regulations with respect to this "retaliatory" charging policy. As discussed below, it is only Nicholson's due process contention that has merit.

---

4. The practice or policy initiated by Brule was never committed to writing, nor was it posted anywhere within the facility where it would be visible to the inmates. The policy was not employed or enforced throughout the ACI, rather it was only employed and enforced by deputy warden Brule in the medium security facility. The policy was first communicated verbally by Brule to Nicholson on or about August 12, 1988, contemporaneous with Nicholson's initiation of the subject assault allegation. Brule informed Nicholson that, unless he was able to produce sufficient conclusive and substantiating evidence to prove the truth of his assault allegation, Brule would subsequently initiate and prosecute a charge of providing false information.

*Discussion*

■ In order to state a cognizable claim under 42 U.S.C. § 1983, a plaintiff must present facts which show that the defendants, while acting under the color of state law, deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States.[5] Section 1983 is not in itself a source of substantive rights—it provides a remedy only, and the substantive rights must be found in the United States Constitution or other federal law.[6] In order to maintain an action under Section 1983, two elements must be claimed: 1) the deprivation of a right or privilege secured by the Constitution or laws of the United States, and 2) that the deprivation was committed by a person acting under color of state law. A claim must be specific and discrete.

### 1. First Amendment

Nicholson's central claim is that defendants wrongfully charged him for "giving false information" in retaliation for reporting that two correctional officers assaulted him. He claims that the charge, as well as the resulting punishment, constitute "retaliation" which infringes on the exercise of his First Amendment right to seek the redress of grievances from the government. Nicholson also claims that the alleged retaliation against him for initiating an assault complaint has a "chilling effect on a prisoner's ability to petition for redress of institutional infractions or prison brutality."

■ The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law ... abridging ... the right of the people to petition the Government for a redress of grievances." This provision has been incorporated into the Fourteenth Amendment to the United States Constitution and is therefore applicable to the states.[7] The First

Amendment protects not only the substantive right to petition, but also protects those who exercise it from government retaliation in response to the exercise of this right.[8]

Before determining whether defendants have infringed on rights protected by the First Amendment, it is important to isolate the various actions and policies of defendants which are alleged by Nicholson to be unconstitutional. The first alleged action is Brule's policy of charging certain inmates with "giving false information." The second alleged action concerns the disciplinary board's administrative finding that Nicholson provided false information in connection with Nicholson's assault allegations, and the corresponding punishment directed at Nicholson. These two challenged actions and policies should be examined individually in order to determine which, if any, deprived Nicholson of rights protected by the First Amendment.

#### a. Charging Policy

■ Nicholson alleges that Brule followed an "arbitrary and unjustifiable *ad hoc* policy" by which he *charged* inmates with making false statements. Under the policy, Brule, as deputy warden of the ACI medium security facility, automatically initiated a charge of providing false information against any inmate who alleged an assault by correctional officers whenever such allegation did not ultimately result in either (1) the initiation of criminal charges against such correctional officers or (2) the provision of sufficient conclusive evidence by the inmate to substantiate the assault allegation. Nicholson argues that such policy "constitutes retaliation against Nicholson for initiating the assault complaint."

Under the stipulated facts, the charging policy itself did not result in any "retaliation" against Nicholson—it did not result in any action at all against Nicholson except that he

---

**5.** *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981) *rev'd on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Williams v. City of Boston*, 784 F.2d 430, 433 (1st Cir. 1986); *Raper v. Lucey*, 488 F.2d 748, 751 (1st Cir.1973).

**6.** *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

**7.** *See DeJonge v. Oregon*, 299 U.S. 353, 364, 57 S.Ct. 255, 260, 81 L.Ed. 278 (1937).

**8.** *See Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 464, 99 S.Ct. 1826, 1827–28, 60 L.Ed.2d 360 (1979); *Gavrilles v. O'Connor*, 579 F.Supp. 301, 304 (D.Mass.1984).

was ordered to appear before the disciplinary board to answer the charge. No punishment or other significant action resulted from the charge alone.[9] Brule could just have easily charged Nicholson based on his reasonable belief alone, or on the hearsay testimony of other prisoners or correctional officers. Because the charge itself did not result in any state action against Nicholson, it is of no constitutional significance.

Nicholson suggests *Sprause v. Babcock*[10] is persuasive. In *Sprause*, the Eighth Circuit held that the filing of disciplinary charges against an inmate, although otherwise not actionable under Section 1983, was actionable if done in retaliation for his having filed a grievance pursuant to established procedures. *Sprause*, however, is distinguishable from the instant case because the plaintiff in *Sprause* alleged that the counselor "deliberately fil[ed] false disciplinary charges against him." [11]

In contrast, Nicholson argues in this case that Brule's *policy* of charging inmates is retaliatory and in violation of the First Amendment. The requirements of Brule's policy—either the "initiation of criminal charges" or "provision of sufficient conclusive evidence by the inmate to substantiate the assault allegation"—demonstrate no facial intent to retaliate against a prisoner. Rather, they simply establish guidelines as to when it may be reasonable to conclude that a prisoner provided false information or made a false accusation. Thus, after Brule makes an initial determination that no criminal charges have been brought or that the inmate has not provided sufficient evidence to substantiate the assault, the case is referred for adjudication to the disciplinary board.

The subject of the constitutional inquiry should be the state action(s) which immediately and proximately bring about the alleged deprivation of rights. In this case, the facts establish that the alleged loss of liberty was not caused by Brule's charge, but by the disciplinary board's findings and decision to punish Nicholson for "giving false information."

b. *Disciplinary Board's Finding and Punishment for Providing False Information*

The appropriate subject of constitutional inquiry in this case is the disciplinary board's finding that Nicholson provided false information and the accompanying decision by the board to punish Nicholson to thirty days punitive segregation and loss of good time. These actions should be examined because they are the specific actions which led to the alleged "retaliation for exercise of First Amendment rights."

█ Nicholson has presented no convincing argument that the policy of punishing prisoners for providing false information is unconstitutional on its face when conducted in accord with the dictates of procedural due process and the Morris Rules.[12] Prisoners have no constitutional right to present false information or to make false accusations against correctional officers, and there is clearly a rational basis for the correctional authorities to punish this type of conduct.[13]

9. The holding on this issue might be different if the stipulated facts alleged some actual punishment or "retaliation" accompanying the charge itself—such as where a prisoner is automatically transferred to punitive segregation pending a hearing. No such allegation is made here. Nor is any allegation made that the disciplinary board and all the subsequent levels of appeal are inherently biased such that a charge is tantamount to a finding of guilt.

10. 870 F.2d 450 (8th Cir.1989).

11. *Id.* at 451.

12. "Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Gomes v. Fair*, 738 F.2d 517, 524 (1st Cir.1984).

13. Counsel for defendants has argued that the prison environment is generally one of antagonism between the correctional officers and prisoners. Prisoners often make unsubstantiated allegations about correctional officers with whom they are at odds. He argues that if prisoners are not sanctioned in some way when they give false information (which sometimes forms the basis for criminal charges against the correctional officer) they would be undeterred from making such allegations. Indeed, judicial sanctions such as Rule 11, contempt orders, and perjury penalties have a difficult time reaching administrative hearings.

Prison officials may, therefore, take reasonable steps to discipline prisoners in accord with the dictates of constitutional due process, which requires, *inter alia*, that: all decisions be based on some evidence in the record; all decisions be by a non-biased decision-maker; and there be a right to state judicial review.

Nicholson's argument is not that the punishment is facially unconstitutional under the First Amendment,[14] but that the disciplinary board's findings were not based on "substantial evidence" as required by the Morris Rules and the Fourteenth Amendment. As discussed in the next section, I find that the disciplinary board did not comply with minimum standards of due process when it deprived Nicholson of his right to remain in the general inmate population.

### 2. *Fourteenth Amendment Due Process and the Morris Rules*

Nicholson claims the disciplinary board denied him of his liberty without due process of law as required by the Fourteenth Amendment. Specifically, Nicholson claims that the disciplinary board failed to comply with the "Morris Rules" requirement that any punitive measure be based on "substantial evidence" in the record.[15]

The Morris Rules require that there be "substantial evidence" in the record.[16] In contrast, due process under the Fourteenth Amendment to the U.S. Constitution requires only that there be "some evidence in the record."[17] There is some question as to whether the more stringent Morris Rules standard should be the applicable standard in this 1983 action[18]—this, after all, is not an appellate review of the disciplinary board's action. Because the disciplinary board's findings do not even satisfy the minimum requirements of constitutional due process ("some evidence in the record"), it is unnecessary to decide whether, in this 1983 action, the disciplinary board's actions should be reviewed under the "substantial evidence" standard.

Based upon the stipulated facts and exhibits presented, it is clear that the disciplinary board relied on absolutely *no* evidence which is supportive of the proposition that Nicholson provided false information. The disciplinary board report dated January 17, 1989, indicates that the only evidence that board considered was (1) the testimony of Nicholson, (2) a letter received on 1/17/89 from Captain Reynolds of the FBI stating that there was "[i]nsufficient evidence of federal criminal civil rights matter and minor

---

**14.** It is unclear whether Nicholson wishes to argue that the disciplinary board's *punishment* amounted to "retaliation" in violation of the First Amendment in the context of this case. Assuming that Nicholson does make this argument, it is unnecessary to reach the question because, as discussed in the next section, the disciplinary board's actions are clearly prohibited by the Fourteenth Amendment due process clause.

**15.** *See Morris v. Travisono,* 499 F.Supp. 149 (D.R.I.1980).

**16.** The Supreme Court has defined 'substantial evidence' as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Federal Maritime Comm.,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). "This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* at 620, 86 S.Ct. at 1026.

**17.** *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985).

**18.** The Morris Rules, which came into being as a consent judgment, are properly considered state law in the State of Rhode Island. *See Rodi v. Ventetuolo,* 941 F.2d 22, 26–28 (1st Cir.1991). The First Circuit has stated, however, that the Morris Rules "embody a binding declaration of constitutional rights." *Morris v. Travisono,* 509 F.2d 1358, 1361 (1st Cir.1975). Although the Morris Rules do codify constitutional rights, not every alleged violation of the Morris Rules results in a claim of constitutional significance. *See Cugini,* 781 F.Supp. at 113. Thus, in an action under Section 1983,

> [S]tate prisoner actions alleging violations of the Morris rules or seeking enforcement of those rules properly belong in state court because the rules were promulgated under state law and were meant to be dealt with by state machinery.

*Id.* The Court will usually only consider a "claim[s] of constitutional dimension" which will involve "unusual cases involving marked departure [from the Morris Rules] ..." *Id.* (citations omitted)

injury" and that the Assistant United States Attorney declined prosecution, and (3) a letter from the U.S. Department of Justice which also concluded "this matter should be closed." The Board finding concluded "[b]ased upon the findings of the FBI and his failure to convince the board that his complaint was not frivolous and false ... 30 days Punitive Seg.—30 days loss of good time."

First, as to Nicholson's testimony, the disciplinary board report did not provide any summary of Nicholson's testimony or state why his testimony led the board to conclude that Nicholson provided false information. Second, as to the Department of Justice communications, there is an enormous difference between "insufficient evidence" to sustain a civil rights action and the conclusion that the information provided by the prisoner is "false." Prosecutors, in the exercise of prosecutorial discretion, may refuse to prosecute for "insufficient evidence" because, even though the factual allegations may be true, there may not be enough corroborating evidence to overcome the burden of proof. Moreover, even if there was substantial corroborating evidence, a prosecutor might think a civil rights action could not be maintained because, taken as true, the facts do not satisfy the elements required by the law. Simply because a prosecutor determines that there is "insufficient evidence" to proceed with a case does not automatically mean that a the plaintiff lied. In sum, the disciplinary board had before it *no* evidence supporting the conclusion that Nicholson's allegations were false. It violated the minimum standards of due process required by law.

### 3. *Failure to Promulgate Rules and Regulations concerning Charging Policy.*

Nicholson's final argument is that the ACI has failed to promulgate necessary rules and regulations regarding the charging policy as required by law. Nicholson cites Rhode Island General Law ("R.I.G.L.") § 42–56–10(v), which requires the Director of the Department of Corrections to,

> [m]ake and promulgate necessary rules and regulations incident to the exercise of

his or her powers and the performance of his or her duties including but not limited to rules and regulations regarding ... communication, ....

Thus, Nicholson argues, § 42–56–10(v) incorporates an "obligation on the part of the DOC to promulgate and enforce rules that preserve an inmate's relevant rights of communication under the First Amendment."

█ Assuming, *arguendo*, that there is a statutory obligation to promulgate rules concerning the subject matter of this case, this alleged "obligation" to promulgate necessary rules is purely a matter of state law. There is no constitutional requirement that defendants promulgate prison rules and regulations concerning free speech. In connection with this "failure to promulgate," Nicholson has not alleged a deprivation of rights protected by the U.S. Constitution or federal laws. Moreover, any rights under the First Amendment and the Fourteenth Amendments not already codified as part of the Morris Rules may be raised in any forum, without the need to rely on a specific rule. Accordingly, this claim is denied.

### Conclusion

Based on the preceding discussion, I find that defendants Donald O. Ellerthorpe and Michael Solitro,[19] in their official capacities as officers of the Rhode Island Department of Corrections, have denied plaintiff of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Under the stipulated facts, none of the other defendants played a direct role in the conduct which I have found to be unconstitutional. The parties are directed to submit briefs, within 30 days, addressing the appropriate remedies to be fashioned for this violation.[20]

---

**19.** Solitro was the chairman of the disciplinary board which found Nicholson guilty of providing false evidence. Ellerthorpe was the hearing officer who denied Nicholson's appeal.

**20.** The parties are directed to review *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73

L.Ed.2d 396 (1982), *Rodi v. Ventetuolo*, 941 F.2d 22 (1991), 42 U.S.C. § 1988 and any other applicable law. Final judgment will enter after the appropriate relief has been determined.